**Opinion filed September 30, 2010**



## In The

# Eleventh Court of Appeals

_____

### No. 11-09-00169-CV

_____

### WES-TEX TANK RENTAL, INC., Appellant

### V.

### PIONEER NATURAL RESOURCES USA, INC., Appellee

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CV 44,378**

### O P I N I O N

Wes-Tex Tank Rental, Inc. sued Pioneer Natural Resources USA, Inc. alleging that it breached a contract by refusing to honor Wes-Tex's right of first refusal for frac tank rentals in West Texas. The trial court held that Wes-Tex's damage claims were barred by a preexisting master service agreement, and it granted Pioneer's motion for directed verdict. We affirm.

### I. *Background Facts*

Wes-Tex rents frac tanks. On July 5, 2000, Pioneer and Wes-Tex entered into a "Master Service/Sales Agreement" (MSA). The MSA contained general terms that governed the business

relationship between the two parties, but it did not require Pioneer to rent any frac tanks or West-Tex to furnish any tanks. The MSA contained a specific provision that prohibited superseding agreements absent a specific waiver process. Pioneer was engaged in capital intensive projects elsewhere, and in an effort to budget its Permian Basin operations, it asked vendors to agree to a three-year price freeze. In response, Wes-Tex sent Pioneer a letter that read:

> Wes-Tex Tank Rental, Inc. will guarantee our current rates on Frac Tank Rental on new completions and or work-overs of all wells in the West Texas Sprayberry area for the next 36 months.
>
> If this agreement is accepted, Wes-Tex Tank Rental, Inc. will have first right of refusal on all frac tank work in the Sprayberry area.

Pioneer accepted the proposal and countersigned the letter.

Several months later, Pioneer began complaining to Wes-Tex about the condition of its tanks. Pioneer was unsatisfied with Wes-Tex's response, and on November 25, 2002, it notified Wes-Tex that their relationship was terminated. Wes-Tex sued Pioneer alleging that it had breached the MSA as amended by the letter agreement.[1] The parties filed cross motions for summary judgment. Pioneer argued that the letter agreement was not enforceable because it was contrary to the MSA[2] and because it did not provide for mutuality of obligation. The trial court ruled that the letter agreement was not a valid contract, and it entered judgment for Pioneer. Wes-Tex appealed and argued that the letter agreement was a valid contract and that it modified

---

[1]Wes-Tex contended that the letter agreement preempted the MSA to the extent of any conflicting provisions and that, if the MSA was a contract, then "the Letter Agreement modified it."

[2]Specifically, Pioneer argued that the letter agreement was unenforceable because of the following MSA provision:

This Agreement shall control and govern as to all goods and services provided by Contractor for Company from and after its effective date. Neither verbal agreements or representations, nor written work orders, delivery tickets or any other written instruments used by Contractor or Company, shall become a part of any contract between Company and Contractor for any purpose other than to describe the goods and services to be performed by Contractor for Company and to designate the time at which said goods and services are to be delivered or performed. All offers and acceptances by and between Contractor and Company while this Agreement is in effect are expressly limited to and conditioned upon the parties' agreement to the terms of this Agreement. Should the parties desire to waive this provision, and agree that terms and provisions different from, or in addition to, those set out in this Agreement should be applicable to specified goods or services to be provided by Contractor, such waiver and agreement shall only be enforceable if contained in, or reflected by, a separate written instrument, signed by each of the parties, expressly referencing this Agreement and acknowledging and confirming the intention of the parties that same supersede and take priority over the terms and provisions of this Agreement.

the MSA. We agreed with Wes-Tex, found that the letter agreement was a valid contract, and sustained Wes-Tex's first three issues.[3]

The case was remanded, and it proceeded to trial. Pioneer objected to Wes-Tex's lost profits evidence, contending that the MSA barred their recovery. Pioneer also objected to any evidence of attorney's fees because there was no evidence of actual damages. Wes-Tex responded that the MSA was no longer enforceable and that the only contract between the two parties was the letter agreement. In support of this argument, it referenced a statement in our prior opinion describing the letter agreement as a valid contract. Wes-Tex contended that this statement constituted a holding that the letter agreement did not amend the MSA but replaced it. The trial court disagreed and sustained Pioneer's objections. Pioneer then moved for a directed verdict, arguing that Wes-Tex had offered no evidence of damages. The trial court granted that motion and entered judgment for Pioneer.

## II. *Issues and Standard of Review*

Wes-Tex challenges the trial court's judgment with three issues. Wes-Tex argues that the trial court erred by granting the motion for directed verdict because there was an unresolved question of material fact, because the trial court misapplied this court's prior holding, and because the MSA did not bar Wes-Tex's claim for breach of the letter agreement.

A directed verdict is proper in two situations. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). First, a trial court may direct a verdict when a plaintiff fails to present evidence raising a fact issue essential to its right of recovery. *Id.* Second, a trial court may direct a verdict for the defendant if the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *Id.* In reviewing the granting of a directed verdict, we apply the same standard of review as we do when assessing a no-evidence or legal sufficiency challenge. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We may uphold a directed verdict only when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is

---

[3]*See Wes-Tex Tank Rental, Inc. v. Pioneer Natural Resources USA, Inc.*, No. 11-05-00396-CV, 2007 WL 1026431 (Tex. App.—Eastland Apr. 5, 2007, no pet.) (mem. op.). Wes-Tex's first three issues were: (1) Is the letter agreement a contract? (2) Does Texas law allow Wes-Tex and Pioneer to modify Pioneer's Master Service/Sales Agreement by the letter agreement? (3) Did the letter agreement constitute a modification of the Master Service/Sales Agreement consistent with the terms of Article 2A.208?

no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810.

### III. *Can Wes-Tex Recover Lost Profits?*

Wes-Tex reads our prior opinion too broadly. The only question before this court was whether the letter agreement was enforceable. Because the MSA did not require Pioneer to rent any tanks from Wes-Tex and because the parties did not follow the procedure outlined in paragraph two of the MSA when they entered into the letter agreement, it was necessary for us to determine whether this lack of procedure precluded the imposition of a right of first refusal. It was unnecessary for us to determine what effect the letter agreement had on any other provision of the MSA. Indeed, Wes-Tex did not argue in the first appeal that the letter agreement superseded the MSA but only that it amended it. When we agreed with Wes-Tex and found that the letter agreement was a valid contract, we found that the promises made in that agreement were enforceable. We did not hold that the entire MSA had been replaced.

The MSA is a comprehensive agreement that covers numerous issues, most of which are not implicated by the letter agreement. The MSA did not limit Wes-Tex's ability to raise its prices or require Pioneer to rent any of their tanks, but when the parties entered into the letter agreement, they altered both privileges. They did not, however, alter any other contractual right or obligation. In fact, Wes-Tex's trial testimony confirmed that the MSA was otherwise unaffected. The parties' dispute centered over concerns that Wes-Tex's tanks were not in compliance with OSHA regulations. Randy Brookings, Wes-Tex's corporate representative, agreed that, under the MSA, it was his obligation to supply OSHA compliant equipment. Brookings did not contend that, because of the letter agreement, he was no longer bound by this requirement but, instead, testified that the letter agreement was an additional contract above and beyond the MSA and that, after signing the letter agreement, the parties continued doing things the way that they always had.

A modification to a contract creates a new contract. *Boudreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 547-48 (Tex. App.—Houston [1st Dist.] 1994, no writ). The new contract includes the new, modified provisions and the unchanged old provisions. *Greenbelt Elec. Coop., Inc. v. Johnson*, 608 S.W.2d 320, 324-25 (Tex. Civ. App.—Amarillo 1980, no writ); *see also BACM 2001-1 San Felipe Rd. Ltd. P'ship v. Trafalgar Holdings I, Ltd.*, 218 S.W.3d 137, 146 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (a modification alters only those terms of the

4

original agreement to which it refers, leaving intact those unmentioned portions of the original agreement that are not inconsistent with the modification). Wes-Tex contends that whether the letter agreement was a modification of the MSA was a fact question. However, the letter agreement is unambiguous, and its language supports no construction other than a limitation of Wes-Tex's right to raise prices and the imposition of a right of first refusal upon Pioneer. Moreover, Wes-Tex points to no trial testimony creating a fact question on the intention of the parties. Consequently, the trial court did not err when it found that the letter agreement modified but did not supersede the MSA. Because the MSA prohibits the recovery of lost profits, the trial court did not err when it excluded Wes-Tex's lost profits evidence.

The trial court asked counsel what damage issue would be submitted to the jury. Wes-Tex responded that it would tender a lost profits issue. In fact, no other actual damage issue was included in Wes-Tex's proposed charge. Wes-Tex does not contend that it offered evidence of any other form of damage but argues that there must be a remedy for Pioneer's breach of contract and that, if lost profits are not recoverable, then it has no remedy. If we assume that Pioneer breached the letter agreement, then Wes-Tex could not obtain the full benefit of that agreement without recovering its lost profits, but there are other forms of contractual damages.[4] Thus, it is not accurate to say that Wes-Tex has no remedy. If Wes-Tex is precluded from recovering lost profits, then it may be prevented from recovering the full extent of its damages. However, it is significant to note that the damage limitation provision was reciprocal. If Wes-Tex's equipment or personnel damaged a Pioneer well, Wes-Tex was shielded from potentially significant exposure by this same provision. Thus, while neither party was guaranteed full recovery of any contractual damages, both parties faced less exposure than they would have otherwise.

---

[4]Damages for breach of contract protect three interests: a restitution interest, a reliance interest, and an expectation interest. *O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 247 (Tex. App.—San Antonio 1998, pet. denied). Wes-Tex's lost profits claim falls into the third category because it seeks to achieve the economic position Wes-Tex would have enjoyed but for the breach of contract. *See Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 888-89 (Tex. App.—Dallas 2004, pet. denied) (expectation damages are benefit of the bargain damages that restore the non-breaching party to the same position it would have been in had the contract not been breached). Reliance damages restore any expenditures the non-breaching party made in reliance on the contract. *Mistletoe Express Serv. of Okla. City, Okla. v. Locke*, 762 S.W.2d 637, 638-39 (Tex. App.—Texarkana 1988, no writ). Restitution damages restore property or money taken from the non-breaching party and restore it to the position it would have been in had no contract been made. *City of Harker Heights, Tex. v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. App.—Austin 1992, no writ). Nominal damages may also be awarded for a breach of contract. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 664-65 (Tex. 2009). In that instance, the prevailing party may also be entitled to attorney's fees under TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 2008). *See MBM Fin.*, 292 S.W.3d at 666 (noting the possibility of an attorney's fee award upon proof of nominal damage but not reaching the question because the plaintiff could recover neither actual nor nominal damages).

The MSA barred any claim for lost profits.  Because Wes-Tex offered no other evidence of actual damages and because in the absence of actual damage Wes-Tex was not entitled to attorney's fees,[5] the trial court did not err when it granted Pioneer's motion for directed verdict.

IV. *Conclusion*

Wes-Tex's issues are each overruled.  The judgment of the trial court is affirmed.

RICK STRANGE

JUSTICE

September 30, 2010

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.

---

[5]*See MBM Fin.*, 292 S.W.3d at 666 (to recover attorney's fees under Section 38.001, a party must prevail on a breach of contract claim and recover damages).