# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————————

No. 15-10046
Cons. w/ No. 10293

United States Court of Appeals
Fifth Circuit

**FILED**

September 28, 2016

Lyle W. Cayce
Clerk

————————

MARGUERITE HOFFMAN,

Plaintiff - Appellee Cross-Appellant

v.

L&M ARTS,

Defendant - Appellant Cross-Appellee

DAVID MARTINEZ; STUDIO CAPITAL, INCORPORATED,

Defendants - Appellees.

--------------------------------------------------------------------------------

Cons. w/15-10293

MARGUERITE HOFFMAN,

Plaintiff - Appellant

v.

DAVID MARTINEZ; STUDIO CAPITAL, INCORPORATED; L&M ARTS,

Defendants - Appellees.

————————

Appeals from the United States District Court
for the Northern District of Texas

————————

No. 15-10046 Cons. w/ No. 10293

Before DENNIS, ELROD, and GRAVES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This appeal arises out of the sale and public re-sale by auction of a well-known Mark Rothko painting. The painting's original owner, Marguerite Hoffman, argues that she was fraudulently induced into selling the painting with assurances of secrecy and that the eventual public re-sale of the painting constituted a breach of a confidentiality provision in her agreement with the original buyer. For the reasons described below, we AFFIRM the district court's grant of summary judgment for defendant L&M Arts on Hoffman's fraudulent inducement claim, AFFIRM the district court's judgment as a matter of law for defendants David Martinez and Studio Capital, Inc., on Hoffman's breach-of-contract claim, REVERSE the district court's denial of judgment as a matter of law for L&M on Hoffman's breach-of-contract claim, and AFFIRM the district court's denial of Hoffman's motion for attorney's fees under Texas Civil Practice & Remedies Code § 38.001(8). The case is REMANDED for proceedings consistent with this opinion.

## I. Background

Dallas arts patron Marguerite Hoffman purchased Mark Rothko's *Untitled* 1961 ("the Red Rothko") in 1998. Hoffman later bequeathed the Red Rothko to the Dallas Museum of Art, of which she was a major supporter, and it hung there from November 2006 through April 2007 as part of an exhibit called "Fast Forward" that showcased future additions to the museum's collections. The painting had been publicly associated with Hoffman on the front page of the Dallas Morning News and in other media. Nevertheless, in the wake of her husband's death in 2006, Hoffman decided to sell the Red Rothko. Although the sale was permitted under the terms of the bequest, Hoffman was eager to avoid the publicity that would likely result from a public sale and decided to sell the Red Rothko privately.

2

No. 15-10046 Cons. w/ No. 10293

For help finding a buyer, Hoffman and family friend John Van Doren reached out to Robert Mnuchin, a long-time friend and an expert in the market for Rothkos. Mnuchin, along with Dominique Levy, was the co-principal of defendant L&M Arts, an art gallery. Through Van Doren, Hoffman conveyed to L&M her concern for confidentiality. To maintain the secrecy of the sale, Mnuchin agreed to approach only a single buyer and assured Van Doren that the buyer would be an individual.

L&M approached defendant David Martinez, an art collector, to discuss purchasing the Red Rothko. On several previous occasions, both Levy and Mnuchin had transacted with Martinez. Martinez would acquire art sometimes on his own behalf and other times on behalf of Studio Capital, a Belize corporation with which he was involved.[1] From L&M's perspective when transacting with Martinez, he and Studio Capital were one and the same.

Martinez's and Studio Capital's identities remained undisclosed to Hoffman, but Mnuchin assured Van Doren that the buyer was a "very private" "single individual" and that the painting would "disappear" into that buyer's collection based in Europe. In early 2007, Martinez flew with Levy to Dallas to view the Red Rothko, which was still hanging in the Dallas Museum of Art. Negotiations began over the sale, with L&M communicating offers and counteroffers back and forth between Van Doren and Martinez.

The parties eventually agreed to a sale price of $17.6 million (excluding commissions) and memorialized the terms of the sale in a February 2007 letter agreement ("the February Agreement"). The agreement contained a specific confidentiality provision, which provided that "[i]t is the specified wish of the seller that the sale and terms of the sale remain confidential," and that "[i]t is

---

[1] The exact relationship between Martinez and Studio Capital is a matter of some dispute among the parties.

3

requested that confidentiality be maintained indefinitely." In March 2007, however, Christie's auction house contacted Hoffman to discuss her plans to sell the Red Rothko. Christie's had learned the Red Rothko was for sale because Martinez, in the midst of negotiations, had consulted with the chairman of Christie's International for his advice on an appropriate price. Hoffman immediately canceled the sale and conveyed to Martinez and Studio Capital ("the Martinez defendants") and to L&M her sense that there had been a breach of confidentiality.[2]

In April 2007, Van Doren and Mnuchin executed a new letter agreement for the sale of the Red Rothko ("the Agreement"). The Agreement reflected the same sale price as the February Agreement, $17.6 million excluding commissions, but differed from the February Agreement in two notable respects. First, the Agreement contained several new commitments by the buyer: to anonymously donate $500,000 to the Dallas Museum of Art on behalf of an entity of Hoffman's choosing; to allow Hoffman to retain possession of the painting for six months after closing; and to refrain from hanging or displaying the painting for an additional six months thereafter. Second, the Agreement contained modified confidentiality language: "All parties agree to make maximum efforts to keep all aspects of this transaction confidential indefinitely." The entire Agreement fit on a single page.

The Agreement closed, Martinez paid the purchase price, and title for the Red Rothko passed from Hoffman to Studio Capital. As agreed, the painting remained in Hoffman's possession for six months and was subsequently shipped to Studio Capital. After attempting to privately re-sell the Red Rothko with the aid of L&M for a year spanning March 2009 to March

---

[2] The alleged breach of the February Agreement's confidentiality provision is not the subject of this lawsuit. It is included here as background.

2010, Martinez moved the Red Rothko to L&M's gallery in New York and decided to sell it at public auction at Sotheby's. L&M shipped the Red Rothko to Sotheby's on Martinez's instructions. During this time and until May 15, 2010—three days after it was ultimately auctioned—the Red Rothko was the subject of a consignment agreement between Studio Capital and L&M that entitled L&M to possess it.

In May 2010, the Red Rothko appeared on the cover of the Sotheby's catalog. The catalog entry for the Red Rothko, as to which L&M had input with Sotheby's, referenced the "Fast Forward" exhibit at the Dallas Museum of Art that had been dedicated to Hoffman and two other benefactors. The entry specifically referenced pages in the "Fast Forward" exhibit catalog that contained pictures of Hoffman and her late husband posing in front of the Red Rothko and of the Red Rothko hanging in their home. In the lead-up to the auction, an art blogger referenced the Red Rothko's previous appearance in the "Fast Forward" exhibit and named the exhibit's three benefactors, including Hoffman.

Mnuchin reached out to Hoffman in mid-March 2010 and informed her of the impending auction. Through Van Doren, Hoffman asked Mnuchin if she could buy back the painting and was rebuffed. On May 12, 2010, Sotheby's auctioned the Red Rothko for approximately $31 million, including commissions.

Hoffman sued the Martinez defendants and L&M for breach of contract in Texas state court in May 2010, and the defendants removed the case to federal court shortly thereafter based on diversity. The defendants moved to dismiss, arguing in part that there had been no breach because the confidentiality provision in the Agreement governed disclosures about the terms of the 2007 private sale, but not about the fact of the sale itself. In denying the motion, the district court held that the confidentiality provision

No. 15-10046 Cons. w/ No. 10293

was enforceable as a best-efforts clause, and that the fact of the sale was among the "aspects of the transaction" that the parties were obligated to make best efforts to keep confidential.

At the conclusion of discovery, all defendants moved for summary judgment, arguing that there was insufficient evidence of breach and no triable issue on damages. In denying summary judgment, the district court specifically upheld Hoffman's proposed damages measure based on an "auction premium" theory. Per the district court, the value of the allegedly breached confidentiality provision—*i.e.* the benefit of the bargain that Hoffman did not receive—could be measured by "the difference between $17.6 million [the sale price in the Agreement excluding commissions] and what the painting would have sold for at public auction on or around April 24, 2007."

The district court later granted Hoffman leave to amend her complaint. Hoffman's ensuing Third Amended Complaint added a claim against L&M for fraudulent inducement, alleging that L&M had misrepresented "that L&M had made the undisclosed buyer aware of her concerns and of the terms of both contracts, that the undisclosed buyer was an individual and not an institution, and that the Red Rothko would 'disappear' into that individual's very private European collection." The district court allowed a new round of summary judgment motions and subsequently granted summary judgment for L&M on Hoffman's fraudulent inducement claim. In the same order, the court denied the defendants' motion for summary judgment on damages, upholding Hoffman's auction-premium theory of damages "as a matter of law."

A jury trial took place on Hoffman's remaining breach-of-contract claims against each defendant. The jury found all three defendants liable and answered three different damages questions. Question 3(A) asked for "[t]he difference, if any, between the sum of money for which Hoffman sold the painting in the transaction in question and what she could have sold the

6

painting for at public auction on or around April 24, 2007," and the jury answered $500,000. Question 3(B) asked for "[t]he difference, if any, between the value of the benefits Hoffman conveyed under the contract to the defendant in question and the value of the benefits she received in exchange," and the jury answered $0 as to each defendant. Question 3(C) asked for "[t]he value of the benefits that the defendant in question received in connection with the transaction," and the jury answered $450,000 as to L&M and $750,000 as to the Martinez defendants. Hoffman requested that she be allowed to combine the amounts submitted in response to each question, but the district court denied that request and instead granted Hoffman's alternate election of the damages awarded under Question 3(C).

The defendants filed Rule 50(b) motions. The district court granted judgment as a matter of law for the Martinez defendants, holding that there was insufficient evidence that L&M had authority to bind them in the Agreement. The district court denied judgment as a matter of law for L&M, rejecting its arguments that there was insufficient evidence to support a jury verdict as to breach, causation, and damages. Finally, the court determined that Hoffman's elected remedy under Question 3(C) reflected impermissible disgorgement damages, but that Hoffman could recover benefit-of-the-bargain damages under Question 3(A) instead. Hoffman moved under Rule 59(e) to amend the judgment accordingly, and the district court granted the motion. L&M filed a second Rule 50(b) motion re-asserting its previous arguments, and the district court denied the motion in a summary order. Hoffman moved for attorney's fees from L&M under Texas Civil Practice & Remedies Code § 38.001(8), and the district court denied the motion based on an *Erie* guess that the Supreme Court of Texas would not consider an LLC like L&M to be "an individual or corporation" under § 38.001(8).

No. 15-10046 Cons. w/ No. 10293

L&M appeals the district court's denial of its motion for judgment as a matter of law against Hoffman on her breach-of-contract claim, arguing that there was insufficient evidence of breach and causation to support a jury verdict and that the jury award reflected an invalid measure of damages. Hoffman cross-appeals, challenging: the grant of summary judgment for L&M on her fraudulent inducement claim; the district court's rejection of her chosen contract damages remedy under Question 3(C); the denial of her motion for attorney's fees; and the grant of judgment as a matter of law for the Martinez defendants on her breach-of-contract claim.

## II. Analysis

### A. Fraudulent Inducement Claim

We begin with Hoffman's appeal of the district court's order granting summary judgment for L&M on Hoffman's fraudulent inducement claim. This court reviews grants of summary judgment *de novo*, assessing whether there is a genuine dispute as to any material fact, viewing the evidence in the light most favorable to the non-movant. *Miller v. Metrocare Servs.*, 809 F.3d 827, 831–32 (5th Cir. 2016) (citing Fed. R. Civ. P. 56(a)). We follow the district court and the parties in assuming that Hoffman's fraudulent inducement claim is governed by Texas law.[3]

Under Texas law, the elements of fraudulent inducement are: "a misrepresentation; that defendant knew the representation was false and intended [to] induce plaintiff to enter into the contract through that misrepresentation; that plaintiff actually relied on the misrepresentation in entering into the contract; and that plaintiff's reliance led plaintiff to suffer an

---

[3] Before the district court, L&M argued that New York law applied to Hoffman's fraudulent inducement claim but maintained that the district court did not need to decide at the summary judgment stage whether New York or Texas law applied. Thus, the district court applied Texas law.

injury through entering into the contract." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012). Hoffman grounds her fraudulent inducement claim in three asserted misrepresentations by L&M: (1) that L&M possessed authority to sign the Agreement on behalf of Studio Capital, the then-undisclosed buyer; (2) that the buyer of the Red Rothko was an individual; and (3) that the Red Rothko would "disappear" into the undisclosed buyer's "very private" "European collection." We conclude that Hoffman has not shown, as to any of these three asserted misrepresentations, that a genuine dispute of material fact exists regarding each element of Texas fraudulent inducement.

### 1. The "Agency" Misrepresentation

Hoffman's first asserted misrepresentation by L&M is that L&M had authority to enter into the Agreement on behalf of Studio Capital. The district court disregarded this theory of liability as unpleaded, reasoning that Hoffman's Third Amended Complaint "nowhere allege[d] that L&M misrepresented that it possessed authority to sign the [Agreement] on behalf of Studio Capital." We find no error in this decision.

"A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). Accordingly, a district court considering a defendant's motion for summary judgment does not err by disregarding a theory of liability asserted in the plaintiff's response that was not pleaded as required by the applicable pleading standard. *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012). A plaintiff alleging a state-law fraudulent inducement claim is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029 (5th Cir. 2010); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–39 (5th Cir. 2008). "This Court interprets Rule 9(b)

strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent . . . and explain why the statements were fraudulent." *Herrmann Holdings, Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002).

Hoffman failed to plead with adequate specificity that L&M fraudulently induced her to enter into the Agreement by misrepresenting its authority to act on behalf of the buyer. In arguing to the contrary, Hoffman highlights the following factual allegations in her Third Amended Complaint:

> 68. When plaintiff entered into the Contract, she understood that L&M was entering into the Contract on behalf of and with the knowledge of the undisclosed buyer, an individual. Plaintiff's understanding was based on L&M's representation that it was entering into the Contract on the undisclosed buyer's behalf. She understood that L&M was keeping, and would continue to keep, the undisclosed buyer aware of her concerns and of the commitments the undisclosed buyer was making in the Contract.
>
> 69. L&M's representations to that effect were false in multiple respects.
>
> 70. Although L&M was authorized to act and was acting as their agent, neither Martinez nor Studio Capital had been advised that L&M was entering into the Contract. L&M had not made and did not make Studio Capital or Martinez aware of the confidentiality commitment contained in the Contract. Indeed, L&M did not make Studio Capital or Martinez aware of the Contract for more than three years, and not before March 15, 2010.

Hoffman nowhere alleges—either in these paragraphs or elsewhere in her pleadings—that L&M's representation of its authority to act on behalf of the undisclosed buyer was false. Paragraph 68 lists several representations by L&M, including that it had authority to bind the buyer; Paragraph 69 alleges that the representations listed in Paragraph 68 "were false in multiple respects"; and Paragraph 70 identifies the respects in which the representations were false. Not only does Paragraph 70 not highlight as false L&M's representation of its authority—to the contrary, Paragraph 70

10

acknowledges it to be true: "L&M was authorized to act and was acting as [the Martinez defendants'] agent." Because Hoffman did not adequately plead that L&M fraudulently induced her to enter into the Agreement by falsely representing its authority to act on behalf of the buyer, the district court did not err in granting summary judgment for L&M on that theory of liability.[4]

### 2. The "Individual" Misrepresentation

Hoffman's second asserted misrepresentation by L&M is that the undisclosed buyer on whose behalf L&M negotiated the Agreement was an "individual." The district court determined that L&M was entitled to summary judgment on this theory of liability because Hoffman had failed to create a genuine dispute as to whether this alleged misrepresentation caused her any injury. We agree.

Hoffman's losses in this case, if any, arose after the Agreement was executed and in effect.[5] In a Texas fraudulent inducement case based on a misrepresentation of fact whose falsity leads to losses after the contract is executed, typically only consequential damages are recoverable.[6] *See Fazio v.*

---

[4] In a corollary argument, Hoffman asserts that L&M misrepresented that it would inform the buyer of the terms of the Agreement, including the confidentiality provision, and that L&M did not disclose to Hoffman that it had failed to do so. In its summary judgment brief to the district court, L&M argued that this theory of fraudulent inducement failed for lack of evidence of intent and causation, and these points were not rebutted in Hoffman's response brief. The district court's summary judgment order did not address Hoffman's failure-to-disclose theory of fraudulent inducement and we deem Hoffman to have forfeited it.

[5] Because the jury found zero difference "between the value of the benefits Hoffman conveyed under the contract to [each defendant] and the value of the benefits she received in exchange," Hoffman suffered no losses ascertainable at the time the Agreement was executed.

[6] A broader range of remedies is available—including out-of-pocket damages and benefit-of-the-bargain damages—when damages from a misrepresentation of fact can be ascertained at the time of the transaction. *See Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 817 (Tex. 1997). Out-of-pocket and benefit-of-the-bargain damages are also available when the claim is based on a fraudulent promise to perform that is broken

*Cypress/GR Houston I, L.P.*, 403 S.W.3d 390, 394–95 (Tex App.—Houston [1st Dist.] 2013, pet. denied) (en banc).  Consequential damages in a fraudulent inducement case must be "foreseeable and directly traceable to the fraud and result from it." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 n.1 (Tex. 1998).  Accordingly, "[s]ubsequent losses . . . are recoverable only if the misrepresentation is a producing cause of the loss." *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 817 (Tex. 1997)[7]; *accord Blue Gordon, C.V. v. Quicksilver Jet Sales, Inc.*, 444 F. App'x 1, 10–11 (5th Cir. 2011) ("[I]t is not sufficient to show that [the plaintiff] would not have entered into the Agreement if [the defendant] had not made the alleged misrepresentations or nondisclosures; that allegation goes to the element of reliance.  Rather, [the plaintiff] must show that [the defendant's] misrepresentations or nondisclosures caused the injury [the plaintiff] suffered.").

Hoffman has not created a genuine dispute that any losses were directly traceable to Studio Capital being a corporate entity rather than an individual.  Hoffman's asserted injuries resulted from alleged breaches of confidentiality, and the district court determined that "a reasonable jury could not find from the summary judgment evidence that the ability or inclination of an *entity* to comply with [the confidentiality provision] was materially different from that of an *individual*."  We agree, and Hoffman does not challenge this determination on appeal.

---

post-sale. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49–51 (Tex. 1998).

[7] *Arthur Andersen & Co.* was decided under the Texas Deceptive Trade Practices Act, but its discussion of common law recovery for fraud has been cited in Texas fraudulent inducement cases.  *See, e.g.*, *Formosa Plastics*, 960 S.W.2d at 49; *Fazio*, 403 S.W.3d at 395.

Hoffman instead argues that she is excused from showing any nexus between L&M's alleged misrepresentation and her asserted injury because she seeks equitable rescission and disgorgement, remedies for which she argues no such nexus must be shown. Hoffman forfeited this argument by omitting it from her brief in opposition to summary judgment—an omission expressly noted by the district court.[8] Because Hoffman showed no nexus between her asserted injuries and L&M's alleged misrepresentation that the buyer was an "individual," the district court did not err in granting summary judgment for L&M on that theory of liability.

### 3. The "Disappear" Misrepresentation

Hoffman's third asserted misrepresentation by L&M is Mnuchin's statement that the Red Rothko would "disappear" into the undisclosed buyer's "very private European collection." L&M argues that summary judgment on this theory of liability should be affirmed because, *inter alia*, the "disappear" statement was not an actionable representation. We agree.

A representation of fact can constitute actionable fraudulent inducement only if it "(1) admits of being adjudged true or false in a way that (2) admits of empirical verification." *Presidio Enters., Inc. v. Warner Bros. Distributing Corp.*, 784 F.2d 674, 679 (5th Cir. 1986). "Pure expressions of opinion are not representations of material fact, and thus cannot provide a basis for a fraud claim." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337–38 (Tex. 2011). Because "[a] prediction, or statement about the future, is essentially an expression of opinion," future predictions are generally

---

[8] Though Hoffman did address her entitlement to rescission and disgorgement, she failed to argue that seeking these remedies excused the absence of a nexus between the alleged misrepresentation and her asserted injuries, despite L&M having argued that this absence was fatal to her claim. As the district court observed, Hoffman did "not argue that the availability of these remedies enables her to establish that she was injured by the misrepresentation that the buyer was an individual."

No. 15-10046 Cons. w/ No. 10293

not actionable. *Presidio Enters.*, 784 F.2d at 679, 680. In rare cases, a prediction of future events can be "so intertwined with" "direct representations of present facts" as to be actionable. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 931 (Tex. 1983). In addition, "[a]n expression of an opinion as to the happening of a future event may . . . constitute fraud where the speaker purports to have special knowledge of facts that will occur or exist in the future." *Id.* at 930; *see also Italian Cowboy Partners*, 341 S.W.3d at 338 ("Special or one-sided knowledge may help lead to the conclusion that a statement is one of fact, not opinion.").

The "disappear" statement is a non-actionable prediction of future events. The statement, as understood by both Hoffman and L&M, reflected L&M's opinion, based in part on its knowledge of the buyer's identity, that the buyer probably would not generate publicity for the Red Rothko. As Hoffman understood it, the statement "meant she would not hear of the Red Rothko again." Whether that prediction came true depended on the actions of a third party, the buyer, which Hoffman should have known was not within L&M's predictive powers, notwithstanding that L&M knew the buyer's identity.[9] This is not a case in which one party's "[s]pecial or one-sided knowledge" warrants treating an opinion as actionable. *Italian Cowboy Partners*, 341 S.W.3d at 338; *see also Presidio Enters.*, 784 F.2d at 682 ("The 'special knowledge' exception applies typically to the opinions of specialized experts—such as jewelers, lawyers, physicians, scientists, and dealers in antiques—where their opinions

---

[9] Because L&M was arguably negotiating on behalf of the undisclosed buyer, its statement that the Red Rothko would disappear into the buyer's very private collection may have amounted to a promise of future performance, over which L&M's principal had direct control, rather than a mere prediction as to which L&M had superior knowledge but not direct control. A promise of future performance "made with no intention of performing at the time it was made" can substantiate a claim for fraudulent inducement. *Formosa Plastics*, 960 S.W.2d at 48. Nevertheless, neither Hoffman nor L&M treats the "disappear" statement as a promise of future performance, and we follow suit.

14

No. 15-10046 Cons. w/ No. 10293

are based on concrete, specific information and objective, verifiable facts."); Restatement (Second) of Torts § 542 cmt. f Westlaw (database updated June 2016).

Though the "disappear" statement incorporated falsifiable facts—that the buyer was an "individual" with a "European collection"—these facts were not so intertwined with L&M's prediction as to make the entire statement actionable. The link between a fact as to which the defendant has special knowledge and a statement of opinion must be much closer for the opinion to be actionable. For instance, in the leading Texas case in this area, the defendant had sold lots in a subdivision after predicting to the buyer that a nearby trailer park would soon relocate. As the Supreme Court of Texas explained:

> [The defendant's] representation was not merely an expression of opinion that the trailer park would be moved in the future. He falsely represented that the trailer park had been sold, and that notices had been given to the tenants. These are direct representations of present facts which are so intertwined with his future prediction that the whole statement amounts to a representation of facts.

*Trenholm*, 646 S.W.2d at 930–31. The undisclosed buyer's status as an individual with a European collection had far less bearing, if any, on whether the Red Rothko would indeed "disappear."

Because L&M's statement that the Red Rothko would "disappear" into the buyer's very private European collection was not an actionable statement of material fact, the district court properly granted summary judgment for L&M on this theory of liability.[10]

---

[10] Hoffman argues in a footnote that the district court failed to analyze her fraudulent inducement claim as it was actually pleaded by not considering all three asserted misrepresentations together, examining their effects in the aggregate. We deem this argument forfeited as inadequately briefed. *See United States v. McMillan*, 600 F.3d 434, 457 n.75 (5th Cir. 2010). In any event, were we to consider all three representations in the

No. 15-10046 Cons. w/ No. 10293

## B. Breach-of-Contract Claim

We turn next to L&M's appeal of the judgment in favor of Hoffman on her breach-of-contract claim. After the jury found L&M and the Martinez defendants liable for breaching the confidentiality clause of the Agreement and answered three separate damages questions, the district court denied L&M's Rule 50(b) renewed motion for judgment as a matter of law.[11] The court ruled that Hoffman had presented evidence from which a reasonable jury could conclude that the Agreement's confidentiality clause was breached. The district court also ruled that, although the jury's damages award of $1.2 million in response to Question 3(C) on the verdict form reflected an unavailable disgorgement remedy, the jury's award of $500,000 in response to Question 3(A) reflected legally viable benefit-of-the-bargain damages. The district court accordingly granted Hoffman's subsequent Rule 59(e) motion, awarding her $500,000 in an amended judgment.

"[This court] review[s] de novo the district court's denial of a motion for judgment as a matter of law, applying the same standards as the district court." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013). Judgment as a matter of law is appropriate where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue." Fed. R. Civ. P. 50(a). Likewise, "[t]o the extent that a [Rule 59(e)] ruling was a reconsideration of a question of law, . . . the standard of review is *de novo*." *Potts v. Chesapeake Exploration, L.L.C.*, 760 F.3d 470, 473

---

aggregate, our analysis would not change regarding any of the elements of fraudulent inducement as to which Hoffman has failed to show a genuine dispute.

[11] The district court granted the Martinez defendants' Rule 50(b) motion, ruling that there was no evidence from which a reasonable jury could conclude that L&M had actual or apparent authority to bind the Martinez defendants to the Agreement. Because we hold that there was no compensable breach of the Agreement, we need not address whether the Agreement bound L&M and the Martinez defendants or only L&M.

16

(5th Cir. 2014) (quoting *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 721–22 (5th Cir. 2013)).  Because L&M's appeal presents purely legal questions concerning the interpretation of a contract and the validity of various damages measures, our review is *de novo*.

### 1. Breach

L&M first argues that it is entitled to judgment as a matter of law on Hoffman's breach-of-contract claim because the evidence did not support a finding that the confidentiality clause, properly construed, had been breached. The confidentiality clause provided that "All parties agree to make maximum effort to keep all aspects of this transaction confidential indefinitely."  All of the allegedly breaching acts—including the Martinez defendants' public auction of the Red Rothko, L&M's failure to stop the auction, and L&M's contributions to the auction catalog—violated confidentiality, if at all, by potentially revealing that Hoffman had previously sold the Red Rothko and was no longer its owner.  In determining whether any of those acts violated the confidentiality clause, we are therefore presented with a pure question of contract interpretation: whether the "aspects of th[e] transaction" that the parties agreed to keep confidential included the fact of the transaction itself. The district court concluded that the fact of the transaction was covered by the confidentiality clause; we conclude that it was not.

"Under Texas law,[12] '[t]he primary concern of a court construing a written contract is to ascertain the true intent of the parties as expressed in the instrument.'"  *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (quoting *Nat. Union Fire Ins. Co. of Pittsburgh*, 907 S.W.2d 517, 520 (Tex.

---

[12] Both L&M and Hoffman apply Texas law to Hoffman's breach-of-contract claim. L&M asserts in a footnote that Hoffman's breach-of-contract claim is governed by New York law—a point it preserves for purposes of its argument on attorney's fees—but proceeds to apply Texas law throughout its briefs, recognizing that Texas law and New York law are materially alike with respect to the substantive contract law issues raised in L&M's appeal.

1995)).  "To determine the parties' intent, we examine the express language of their agreement."  *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014).  Though we understand the parties' chosen language "in light of the facts and circumstances surrounding the contract's execution," our consideration of any extrinsic evidence is "subject to the limitations of the parol-evidence rule."  *Id.*; *accord* Tex. Bus. & Com. Code § 2A.202 (Terms included in an integrated writing "may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement but may be explained or supplemented . . . by course of dealing or usage of trade or by course of performance.").  "In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls."  *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 n.25 (Tex. 2011) (citation omitted).

The language of the Agreement indicates that the confidentiality clause does not require secrecy as to the fact of the sale.  By its own terms, the confidentiality clause requires maximum effort to keep secret "all aspects of th[e] transaction."  References to an object's "aspects" generally describe features of the object rather than the object itself.  *See The American Heritage Dictionary of the English Language* (5th ed. 2016) (defining "aspect" as "[a] characteristic or feature of something").  As most naturally understood, the fact that the 2007 sale occurred is not an "aspect" of that transaction subject to the confidentiality clause.

Other provisions of the Agreement also indicate that the confidentiality clause does not require secrecy as to the fact of the 2007 sale.  Immediately after the confidentiality clause, the Agreement provided: "In addition, the buyer agrees not to hang or display the work for six months following receipt of the painting."  This specific, express prohibition on displaying the Red Rothko for a fixed period of time "raises an inference," per "[t]he maxim

*expressio unius est exclusio alterius*," that the parties did not intend to forbid the buyer from displaying the painting once that fixed period had passed. *CKB Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655–56 (Tex. 1987); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107–11 (2012) (describing *expressio unius* canon of interpretation).   The possibility of the new owner's displaying the Red Rothko once six months had passed indicates that the parties did not intend that maximum efforts be undertaken to keep the fact of the 2007 sale confidential indefinitely.   A public (or even private) display would likely fall short of "maximum effort" to keep changed ownership confidential.[13]

Our examination of "the facts and circumstances surrounding the [Agreement's] execution," including "the commercial . . . setting in which the contract was negotiated," *Houston Exploration Co.*, 352 S.W.3d at 469 (quoting 11 Richard A. Lord, *Williston on Contracts* § 32.7 (4th ed. 1999)), confirms that the fact of the 2007 sale was not among the "aspects of the transaction" as to which the parties promised confidentiality.   The first version of the contract to which the parties agreed—the February Agreement—expressly required "that the sale and the terms of the sale remain confidential."   The February Agreement's explicit requirement of confidentiality as to "the sale" itself suggests that the absence of any reference to the sale in the final Agreement's confidentiality clause was intentional.   In addition, the jury heard testimony from Dominique Levy that resale restrictions, whether they prohibit resale at public auction or any resale at all—are "usually spelled out very explicitly" in the art industry and typically apply for a fixed period of time or within a fixed

---

[13] The parties dispute whether displaying the Red Rothko would *necessarily* reveal its changed ownership, but that dispute misses the point.  Because of the confidentiality clause's strong "maximum effort" language, publicly displaying the Red Rothko would likely constitute a breach if the fact of sale is an "aspect of the transaction" that must be kept confidential, even if changed ownership would not *necessarily* be revealed.

geographical territory. Hoffman herself has even employed an express resale restriction on at least one occasion. Both the parties' prior dealings and evidence of industry norms suggest that resale restrictions are usually explicit.

One additional consideration leads us to read the confidentiality provision not to require secrecy as to the fact of the 2007 sale. Where a contract could be read to contain a promissory restraint on alienation, Texas courts "prefer a construction of a possible restraint so that there is no such result." *Crestview, Ltd. v. Foremost Ins. Co.*, 621 S.W.2d 816, 826 (Tex. App.—Austin 1981, writ ref'd n.r.e.) (citing Restatement (First) of Property § 418 (1944)).

Under Hoffman's reading, the confidentiality provision permanently prevented the public sale of the Red Rothko and significantly constrained how Studio Capital could conduct even a future private sale. On that reading, the confidentiality provision constituted an indirect promissory restraint on alienation and accordingly would be void if unreasonable. *See* Restatement (Second) of Property § 3.3 Westlaw (database updated June 2016) ("The terms of a donative transfer of an interest in property which seek to impose a contractual liability on one who makes a later transfer of that interest constitute a promissory restraint on alienation . . . ."); *Sonny Arnold, Inc. v. Sentry Sav. Ass'n*, 633 S.W.3d 811, 814–15 (Tex. 1982) (focusing on creation of contractual liability, even where future disposition is not expressly prohibited). Given that the confidentiality clause required "maximum effort" and applied "indefinitely," its reasonableness as a restraint on alienation would be tenuous at best. *Cf. Mattern v. Herzog*, 367 S.W.2d 312, 319–20 (Tex. 1963) (holding that a promissory restraint on alienation was not void as unreasonable because it was limited to a reasonable period of time rather than indefinite). Accordingly, we resolve any lingering doubt against the confidentiality clause's application to the fact of the 2007 sale so as to avoid reading it as a potentially unreasonable restraint on the alienation of property.

These indicators confirm what the language of the Agreement already makes clear: the confidentiality clause did not require secrecy as to the fact of the 2007 sale, and the jury therefore did not hear evidence from which it could reasonably have found that L&M breached the Agreement. We accordingly hold that L&M was entitled to judgment as a matter of law on Hoffman's breach-of-contract claim.[14]

## 2. Damages

Even were we to conclude that a reasonable jury could have found that L&M breached the agreement, L&M would nevertheless be entitled to judgment as a matter of law because the jury's damages award rested on a legally non-viable measure of damages. The district court determined that the jury's answer to Question 3(C), which asked for "[t]he value of the benefits that [each defendant] received in connection with the transaction," reflected a disgorgement remedy that the Supreme Court of Texas would not endorse in a breach-of-contract case. The court instead awarded Hoffman $500,000 in damages based on the jury's answer to Question 3(A), which asked for "[t]he difference, if any, between the sum of money for which Hoffman sold the painting in the transaction in question and what she could have sold the painting for at public auction on or around April 24, 2007." The parties have referred to Question 3(A) as encapsulating an "auction premium" theory of the value of the confidentiality clause, and the district court held as a matter of

---

[14] Because we hold that there was no compensable breach of the Agreement, we need not address Hoffman's argument on cross-appeal that she is entitled to prevailing party attorneys' fees under section 38.001(8) of the Texas Civil Practice and Remedies Code. However, we note that an intervening decision by the Court of Appeals of Texas supports the district court's *Erie* guess that an LLC like L&M is not "an individual or corporation" under section 38.001(8). *See Choice! Power, L.P. v. Feeley*, No. 01-15-00821-CV, 2016 WL 4151041, at *10 (Tex. App. Aug. 4, 2016) (interpreting "corporation" in section 38.001(8) to refer specifically to incorporated entities rather than generally to all businesses).

law that the "auction premium" question reflected legally valid benefit-of-the-bargain damages.  L&M challenges this determination.

"Ordinarily, when a court concludes that there has been a breach of contract, it enforces the broken promise by protecting the expectation that the injured party had when he made the contract."  Restatement (Second) of Contracts § 344 cmt. a Westlaw (database updated June 2016).  Accordingly, "contract damages serve to give a plaintiff the benefit of his bargain, i.e., to place the plaintiff in the position he would have occupied if the contract had been performed." *Gilbert Wheeler, Inc. v. Enbridge Pipelines (East Tex.), L.P.*, 449 S.W.3d 474, 479 (Tex. 2014).  Typical contract damages calculate the benefit of the bargain by subtracting the value of the performance actually received by the non-breaching party from the value of the performance contracted for.  *See Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001).  Where the dollar value of the contracted-for performance is difficult to ascertain, a benefit-of-the-bargain jury question can permissibly use the value of the non-breaching party's performance as a proxy in appropriate circumstances.  *See Jerry Parks Equipment Co. v. Southeast Equipment Co.*, 817 F.2d 340, 343 (5th Cir. 1987).  In all circumstances, however, a benefit-of-the-bargain damages question must encapsulate the difference between what was bargained for and what was received.  Restatement (Second) of Contracts § 347.

Question 3(A) did not properly encapsulate the lost benefit of Hoffman's bargain.  Because the parties agree that the defendants performed all of their duties under the Agreement with the exception of the duty of confidentiality, a proper benefit-of-the-bargain question should have captured the value to Hoffman of the performance of that duty, standing alone.  Instead, Question 3(A) measured the difference "between the *sum of money for which Hoffman sold the painting* in the transaction in question and what she could have sold

the painting for at public auction on or around April 24, 2007," the date the Agreement was signed.　(emphasis added).　Because "a hypothetical, speculative bargain that was never struck and would not have been consummated" cannot serve as a baseline for benefit-of-the-bargain damages, it is far from clear that the hypothetical auction value of the Red Rothko is an appropriate proxy for the performance that Hoffman bargained for.　*Formosa Plastics*, 960 S.W.2d at 50.　But even assuming away that problem, "the sum of money for which Hoffman sold the painting" does not reflect the performance she actually received.　Rather, under the Agreement Hoffman received not only a sum of money—$17.6 million after commissions—but also several other commitments from Studio Capital.　Specifically, Studio Capital committed to and actually did: (1) make a $500,000 contribution to the Dallas Museum of Art; (2) allow Hoffman to keep possession of the Red Rothko for six months after the sale; and (3) refrain from hanging or displaying the Red Rothko for an additional six months thereafter.[15]　Because Question 3(A) did not subtract these elements of the performance that Studio Capital delivered,[16] it failed to isolate the value of the confidentiality clause.

---

[15] Hoffman argues that the jury heard evidence from which it could have concluded that these commitments from Studio Capital were not bargained-for performance but rather punishment for its previous breach of secrecy in connection with the February Agreement. This argument fails for two reasons.　First, some of the trial testimony that Hoffman highlights actually supports the opposite conclusion: that the additional commitments were "offered to [her] as – as an incentive for [her] to reconsider the sale"—in other words, they were bargained for.　Second, Question 3(A) did not leave the jury free to decide whether the additional commitments were part of Studio Capital's bargained-for performance; rather, it expressly called for the jury to subtract only "the sum of money" that Hoffman received under the Agreement.

[16] If anything, the jury's award of exactly $500,000 in response to Question 3(A) suggests that it may have been specifically taking into account the $500,000 that Studio Capital agreed to contribute to the Dallas Museum of Art and might have been willing to pay to Hoffman instead in a hypothetical public auction.

No. 15-10046 Cons. w/ No. 10293

Nor did the damages awarded in Question 3(C)—which the district court discarded and which Hoffman asks us to reinstate—reflect a proper measure of contract damages. Question 3(C) asked for "[t]he value of the benefits that [each defendant] received in connection with the transaction." The district court concluded that Question 3(C) elicited a disgorgement remedy and made an *Erie* guess that the Supreme Court of Texas would not allow a disgorgement remedy for a breach-of-contract claim. We agree.

In Texas, "[t]he universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage *actually sustained.*" *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 278 (5th Cir. 2009) (citation omitted). Though benefit-of-the-bargain damages are not the *only* proper measure of the plaintiff's losses, the other permissible measures—including reliance and restitution damages—also focus squarely on the plaintiff's actual losses. *Wes-Tex Tank Rental, Inc. v. Pioneer Natural Res. USA, Inc.*, 327 S.W.3d 316, 320 n.4 (Tex App.—Eastland 2010, no pet.); *see also* Restatement (Second) of Contracts §§ 344, 370. Unlike these permissible damages remedies, equitable disgorgement focuses on divesting the wrongdoer of its ill-gotten gains rather than making the victim whole. *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993).

Because Question 3(C) asked for "the value of the benefits that [each defendant] received" rather than the value of the benefits conferred on each defendant by Hoffman, we hold that it reflected a disgorgement remedy that the Supreme Court of Texas would reject. Several Texas intermediate courts have held disgorgement to be an unavailable remedy under Texas contract law. *See, e.g.*, *Henry v. Masson*, 333 S.W.3d 825, 849 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Bancservices Group, Inc. v. Strunk & Assocs., L.P.*, No. 14-03-00797-CV, 2005 WL 2674985, at *6 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (mem. op.). We have also previously commented that, "[i]n Texas,

24

No. 15-10046 Cons. w/ No. 10293

unjust enrichment is based on quasi-contract and is unavailable when a valid, express contract governing the subject matter of the dispute exists." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001).

Against these authorities, Hoffman highlights section 39 of the Restatement (Third) of Restitution and Unjust Enrichment, which "describes a *disgorgement* remedy" in the event of a profitable opportunistic breach. Cmt. a. Hoffman also notes that the Supreme Court of the United States recently endorsed a disgorgement remedy for breach of an agreement between two states as a matter of federal common law, with extensive reference to section 39 of the Restatement. *Kansas v. Nebraska*, 135 S. Ct. 1042, 1056–58 (2015). Nevertheless, given Texas courts' singular focus on compensating a plaintiff for its losses, we conclude that the Supreme Court of Texas would not follow this approach in a Texas breach-of-contract case, at least absent a fiduciary relationship between the parties.

Because neither Question 3(A), on which the district court awarded judgment for Hoffman, nor Question 3(C), on which Hoffman seeks to recover, awarded a legally valid measure of damages for any breach of the Agreement by the defendants, we conclude that the defendants are entitled to judgment as a matter of law even if such a breach occurred.

### III. Conclusion

We AFFIRM the district court's grant of summary judgment for L&M on Hoffman's fraudulent inducement claim, AFFIRM the district court's judgment as a matter of law for the Martinez defendants on Hoffman's breach-of-contract claim, REVERSE the district court's denial of judgment as a matter of law for L&M on Hoffman's breach-of-contract claim, and AFFIRM the district court's denial of Hoffman's motion for attorney's fees under Texas Civil Practice & Remedies Code § 38.001(8). The case is REMANDED for proceedings consistent with this opinion.