# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10622

United States Court of Appeals
Fifth Circuit

**FILED**
October 22, 2018

Lyle W. Cayce
Clerk

MANSOUR BIN ABDULLAH AL-SAUD,

Plaintiff - Appellee Cross-Appellant

v.

YOUTOO MEDIA, L.P.; CHRISTOPHER WYATT,

Defendants - Appellants Cross-Appellees

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:15-CV-3074

Before HIGGINBOTHAM, DENNIS, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:*

Mansour Bin Abdullah Al-Saud made a $3 million reimbursable down payment to Youtoo Media, L.P. while he considered whether to purchase a stake in the technology company. When Youtoo's prospects dimmed and creditors forced the sale of its intellectual property, Al-Saud wanted his $3 million back. Youtoo declined, Al-Saud sued, and a jury found that Youtoo breached the parties' agreement. The jury also determined that Youtoo's CEO Chris Wyatt had breached the contract. We affirm that judgment, but remand

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-10622

for further consideration of attorneys' fees under a loan agreement between the parties.

## I.

Youtoo's technology blended social media and television by allowing viewers to actively participate in broadcasts by sending texts, pictures, and videos that networks could insert into programs. The company also developed a "sweepstakes platform" that would let viewers compete for cash and prizes while watching game shows and sporting events. But to sell the platform to American broadcasters (its ultimate goal), Youtoo felt it had to demonstrate success in other markets, and to do that it needed capital. That search for markets and money brought these parties together.

Wyatt discussed initiating Youtoo operations in the Middle East and selling a stake in the company with Al-Saud, who is a member of the Saudi royal family, and his advisor. The parties signed a Letter of Intent (LOI) in October 2013. Al-Saud gave Youtoo $3 million as a down payment to cover its short-term costs and had three months to decide "in his sole discretion" whether to buy a stake in the company. If he declined that option, Youtoo would reimburse the down payment. The LOI also created Youtoo Middle East, a joint venture that would market the company's interactive platform in the region.

The LOI provides that Youtoo's "general partner is Chris Wyatt (the 'General Partner')." And Wyatt signed the agreement on behalf of both Youtoo and "Chris Wyatt as the General Partner"

No. 17-10622

Signed
For and on behalf of:
**YOUTOO MEDIA, L.P.**

.................................................
*Authorized Signatory*

Signed
For and on behalf of:
**Chris Wyatt as the General Partner**

.................................................
*Authorized Signatory*

But registration documents filed with the Texas Secretary of State indicate that Youtoo Management, LLC, not Wyatt, is the General Partner. Though drafts of the LOI mention Youtoo Management as Youtoo's General Partner, the signed contract does not.

Al-Saud ultimately opted against purchasing an interest in the company. But because Wyatt made clear that it needed cash to continue operations—operations that would presumably redound to the benefit of Youtoo Middle East—Al-Saud gave Youtoo an additional $310,000. A March 2014 Facility Agreement memorialized that loan.

Despite this move to shore up its finances, Youtoo's primary lender eventually forced the company to sell its intellectual property and assets to cover outstanding debts. In light of Youtoo's wind down, Al-Saud asked for his money back. But Youtoo rejected his request for repayment of both the down payment and the loan. For the down payment, it asserted that Al-Saud had agreed to be "reimbursed in full" through the first $3 million in profit distributions from Youtoo's share in the Middle East entity. As to the loan, the company contended that Al-Saud had agreed to be repaid in services Youtoo performed for Youtoo Middle East.

No. 17-10622

Unsatisfied, Al-Saud sued for breach of contract. Youtoo counterclaimed for breach of contract, breach of fiduciary duty, and fraud. At trial, the district court dismissed Youtoo's counterclaims as a matter of law. The jury then found Youtoo and Wyatt liable for breaching the LOI and awarded Al-Saud $3 million in damages for the down payment that was not returned. It also found Youtoo liable for breaching the Facility Agreement but awarded Al-Saud only $6,820 for that claim, which was the interest associated with the loan. Al-Saud sought attorneys' fees for his success on both claims. The district court allowed him to recover them against Wyatt (but not Youtoo) for the claim that recovered the $3 million down payment, but denied the request for work relating to the Facility Agreement claim.

## II.

Youtoo does not appeal the judgement entered against it for breaching the LOI. Wyatt does, arguing that the agreement did not make him directly liable for the down payment and that he cannot be derivatively liable as Youtoo's General Partner because the contract is mistaken in saying he held that position.

## A.

The district court entered judgment against Wyatt based on the jury's finding that he was individually liable for breaching the letter of intent. Al-Saud's primary defense of Wyatt's liability is on this ground. He contends that Wyatt's signing of the contract as General Partner rendered him liable for the failure to return the down payment.

Whether Wyatt could be directly liable under the LOI is a matter of contract interpretation that we review de novo.[1] *Fort Worth 4th Street*

---

[1] Al-Saud argues that Wyatt failed to preserve a challenge to his direct liability by not filing a postverdict motion for judgment as a matter of law. Admittedly, it is not entirely clear from Wyatt's briefing whether he argues there was insufficient evidence to find him

No. 17-10622

*Partners, L.P. v. Chesapeake Energy Corp.*, 882 F.3d 574, 577 (5th Cir. 2018); *cf. Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 388 (5th Cir. 2017) (noting that instructions hinging on questions of statutory construction are reviewed de novo).

The LOI "intended to create legally binding and enforceable obligations between the Parties." Those parties included Youtoo and Al-Saud, not the General Partner (whether that be Wyatt or another entity), although the agreement did specify some obligations of the General Partner. But the LOI placed the burden on Youtoo alone to reimburse Al-Saud's down payment in the event he decided against purchasing a stake in the company: "Youtoo Media shall reimburse the Down Payment to HRH Prince Mansour through a mechanism which is to be agreed between the Parties at such time and with such mechanism to have the economic effect of the Down Payment being reimbursed in full to HRH Prince Mansour."

The absence of the General Partner from the reimbursement requirement contrasts with other provisions that mention or obligate both Youtoo *and* "the General Partner." For example, the General Partner agreed

---

directly liable or whether he challenges as a legal matter the trial court's rejection of his argument that the jury should not have been asked about his liability. Our best reading is that he does both. That means at least the appeal of the jury question was sufficiently preserved in the trial court when he objected to it at the charge conference. *Jimenez v. Wood Cty., Tex.*, 660 F.3d 841, 844–45 (5th Cir. 2011) (en banc) (citing Federal Rule of Civil Procedure 51(c)(1) for the proposition that objections to jury instructions preserve claims of error for appeal when they are specific, formal, and on the record); *see also NewCSI, Inc. v. Staffing 360 Sols., Inc.*, 865 F.3d 251, 263–64 (5th Cir. 2017) (mentioning no renewal requirement for the preservation of objections to jury instructions). We thus need not decide whether a party that fails to renew a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), bars an appeal on factual sufficiency grounds or gets plain error review. *Compare McLendon v. Big Lot Stores, Inc.*, 749 F.3d 373, 375 n.2 (5th Cir. 2014) (holding that absent a Rule 50(b) motion an appellate court is powerless to compel a district court to enter a different judgment), *with Shepherd v. Dallas Cty.*, 591 F.3d 445, 456 (5th Cir. 2009) (reviewing an unpreserved sufficiency challenge for plain error).

5

to deal exclusively with Al-Saud during the term of the LOI and not solicit other investors.  That shows the parties knew how to make the General Partner liable for the reimbursement.  But they did not.  They also could have signed a separate agreement making Wyatt a guarantor for Youtoo's reimbursement obligation.  But again, they did not.  The contract does not make Wyatt directly liable for the breach.

Wyatt's signing the LOI does not alter that dynamic.  In contrast to Al-Saud and his advisor who signed the LOI on their own behalf, Wyatt did so only in a representative capacity for both Youtoo and the General Partner.  Al-Saud relies on the principle that when an agent signs a contract he must disclose the principal's identity and note that he is acting in a representative capacity in order to avoid personal liability.  *See Wright Grp. Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 200–01 (Tex. App.—Dallas 2011, no pet.) (holding signatory personally liable because the signature line just listed him individually without an accompanying corporate name and the contract nowhere mentioned the company he controlled).  But Wyatt did make those required disclosures to avoid personal liability attaching to his act of signing the contract.  He signed "[f]or and on behalf of: YOUTOO MEDIA, L.P.," much like a CEO might sign a contract on behalf of the corporation.  And as long as the CEO makes clear that she is only signing as a representative of the corporation, then she is not directly liable.  That is the situation here.  Wyatt signed for Youtoo in a representative capacity.  His second signature on behalf of himself as General Partner makes him liable for that entities obligations.  But as we have explained, the reimbursement provision only attaches to Youtoo.

The district court therefore should have granted Wyatt's objection to the question allowing the jury to find him directly liable under the contract.

No. 17-10622

B.

But there was nothing wrong with the jury's finding that the contract required Youtoo to return the $3 million (or at least Youtoo does not appeal that finding). And in Texas as elsewhere, the general partner in a limited partnership is liable for the debts and obligations of the partnership. *See* TEX. BUS. ORGS. CODE § 153.152(b); *Doctors Hosp. at Renaissance, Ltd. v. Andrade*, 493 S.W.3d 545, 551 (Tex. 2016). So even if Wyatt was not independently liable for the down payment, we will consider whether this principle of derivative liability provides an alternative basis for affirming the judgment. *See Lincoln General Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 723–24 (5th Cir. 2015) (affirming verdict on alternative grounds when additional factual development is unnecessary); *see also Wallerstein v. Spirit*, 8 S.W.3d 774, 778, 780 (Tex. App.—Austin 1999, no pet.) (holding general partner liable as matter of law for judgment issued by court against limited partner).

The first page of the LOI says that Wyatt is the General Partner of Youtoo Media, as does the signature block (reproduced above). Despite this language, Wyatt contends it was "undisputed and undeniable" that he was not the General Partner. He wants to submit extrinsic evidence to prove this. We have no reason to doubt that the state records would show what Wyatt claims they would. But that alone is not enough to allow its consideration. Courts, when interpreting contracts, are generally limited to the four corners of the document. This restraint, termed the parol evidence rule, reflects the preference for fully integrated written agreements and the certainty they provide. *See* 11 WILLISTON ON CONTRACTS § 33:1, 2 (4th ed. 2018).

As is usually the case with common law rules, there are exceptions to the bar on extrinsic evidence that can account for some situations when its application seems inequitable. One of those exceptions, mutual mistake, seems to cover the problem Wyatt raises. A mistake claim allows for the

7

introduction of extrinsic evidence to demonstrate that a written agreement does not reflect the parties' true agreement. For instance, mutual mistake applies when a typist makes an error while finalizing the contract. *See Simpson v. Curtis*, 351 S.W.3d 374, 379 (Tex. App.—Tyler 2010, no pet.). The remedy is reformation of the contract to fit the parties' intentions. *See Estes Republic Nat. Bank of Dallas*, 462 S.W.2d 273, 275 (Tex. 1970). Wyatt appeared to recognize that his concern fit into this doctrine, but the district court found that he did not timely raise mutual mistake. He does not challenge that procedural ruling.

Because the exception of mutual mistake is off the table, Wyatt must show that the parol evidence rule does not apply in the first place. His argument goes down two tracks. First, he says that derivative liability is imposed by law and not by the contract. According to him, the partnership records go to a matter of law, not to the interpretation of the contract, and thus are admissible. Second, Wyatt seems to argue that it's impossible to impose derivative liability on someone who is not, in fact, the entity legally registered as the General Partner. We reject both of these arguments.

The divide Wyatt tries to establish between liability that arises from contract (no parol evidence) and that arising from law (parol evidence allowed) proves too much. The enforcement of any contractual term depends on the application of "law." So if the parol evidence rule went by the wayside anytime legal principles are being applied, there would be little if anything left of the rule.

Among the many background legal principles against which parties negotiate is derivative liability for general partners. *See Sunbelt Serv. Corp. v. Vandenburg*, 774 S.W.2d 815, 817 (Tex. App.—El Paso 1989, writ denied) ("General partners of a limited partnership are personally liable to creditors for the limited partnership's debts the same as a partner in a general

8

partnership."); TEX. JUR. 3D PARTNERSHIP § 190 (same). When a contract describes a limited partner-general partner relationship, it assumes a derivative liability arrangement. A counterparty who deals with a limited partner takes into account the financial status of the general partner when determining the terms it will accept. Without the general partner, the terms of the contract might be different. And a limited partner and counterparty have the ability to alter the contract to eliminate derivative liability. *See* TEXAS BUS. ORGS. CODE § 152.304(a)(1) (allowing partners and claimants to agree to modify default rule for general partnership liability);[2] § 153.003(a) (making section 152.304(a)(1) applicable to limited partnerships).[3] The contract's listing of Wyatt as General Partner carried the default rule of derivative liability with the designation. As opposed to being some purely external force, derivative liability of a general partner is as much a part of the contract as other types of liability. It is the contract and not the operation of law acting in isolation that imposes the obligations of a general partner. As a result, Wyatt's purported contract/law distinction fails to avoid the ordinary rule that external documents cannot prevent enforcement of what the parties agreed to in writing.

The other part of Wyatt's argument appears to be that derivative liability cannot hold when someone else is the legally registered general partner. But

---

[2] Wyatt argues that Delaware law applies, but does not press the point. Delaware law identically allows partners to agree with claimants to adjust the default rules for liability. *See* 6 DEL. CODE § 15-306(a).

[3] Section 153.152(b) allows only other provisions the Business Organizations Code to alter the liability of general partners to third-parties. But the subchapter deals with the relationship between general and limited partners and does not alter the types of contracts a limited partner could form. The distinction is meaningful. A limited partnership in which the general partner could remove its liability for limited partner activity undercuts the foundation of limited partnerships. But a limited partner could choose to alter its liability without harm to the concept of limited partnerships, though it would probably never choose to do so.

this is just another way to try and avoid the ban on extrinsic evidence. Although the core focus of the parol evidence rule is excluding the negotiation history of a contract, it also bars other extrinsic evidence such as government records that are inconsistent with the terms of the contract. *See Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945) (prohibiting parol evidence to identify the location of land in a contract, though such evidence would typically be in public records); *see also Boyert v. Tauber*, 834 S.W.2d 60, 63 (Tex. 1992) (rejecting use of extrinsic evidence to identify the proper broker in real estate contract). To the extent the parties knew the identity of the actual General Partner but mistakenly listed Wyatt, a claim of mutual mistake was the way to correct this error.

Absent a claim of mutual mistake, there is nothing unusual about holding Wyatt to the agreement he signed. Indeed, a person could contractually agree to take on the legal obligations of a general partner, even if not legally registered as such. The contract here did just that. A different doctrine—partnership by estoppel—demonstrates the point that official documents do not always control. Under partnership by estoppel, a person who falsely represents herself as a member of a partnership can still be liable as if she were a partner. *See Kondos Entertainment, Inc. v. Quinney Elec., Inc.*, 948 S.W.2d 820, 823 (Tex. App.—San Antonio), *rev'd on other grounds*, 988 S.W.2d 212 (Tex. 1999); 57 TEX. JUR. 3d Partnership § 27 (2018). Just as failing to legally form a partnership will not always prevent the imposition of liability, failing to legally register as the general partner will not always do so either. And the reliance interests that underlie estoppel also support enforcing the contract the parties signed.

Of course, our holding might be different if Wyatt had no notice that the contract designated him General Partner. But Wyatt was on notice because

he signed the LOI directly to the right of the words "Signed for and on behalf of: Chris Wyatt as the General Partner."

The contract says Wyatt was the General Partner. The parol evidence rule prevents Wyatt from now trying to change that. He thus is derivatively liable for the Youtoo's obligations under the contract.

## III.

Because we uphold the liability finding as to Wyatt, we must also decide whether the district court erred in awarding attorneys' fees against him. We review that decision de novo. *Brinson Benefits, Inc. v. Hooper*, 501 S.W.3d 637, 641 (Tex. App.—Dallas 2016, no pet.).

The LOI does not discuss attorneys' fees, so Al-Saud sought them under Texas law. A party prevailing on a breach of contract claim may recover fees "from an individual or corporation." TEX. CIV. PRAC. & REM. CODE § 38.001(8). Courts have interpreted "individual" and "corporation" strictly, meaning partnerships like Youtoo are not liable for fees. *See Hoffman v. L&M Arts*, 838 F.3d 568, 583 n.14 (5th Cir. 2016) (citing *Choice! Power, LP v. Feeley*, 501 S.W.3d 199, 214 (Tex. App.—Houston [1st Dist.] 2016, no pet.)).

The district court found Wyatt directly liable for breach. In light of that, the attorneys' fees question was straightforward: Wyatt is an individual and therefore falls within the statute's ambit.

Does our reliance on his derivative liability as Youtoo's general partner change the analysis? Youtoo, a limited partnership, is not answerable for fees. It might seem anomalous if Wyatt were on the hook for fees when the party with the underlying liability is not. And Texas courts have not addressed this situation.

But it is a "cardinal law" in Texas that courts construe a statute by first looking to the plain meaning of its words. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999). That text here is sparse

but clear: "A person may recover reasonable attorney[s'] fees from an individual or corporation." TEX. CIV. PRAC. & REM. CODE § 38.001. It does not make the recovery of such fees dependent on the theory of liability imposed. Instead it looks solely to whether that party is an individual or corporation. Whether Wyatt is derivatively or directly liable, he is still an individual. We will therefore affirm the judgment requiring Wyatt to pay fees for the breach of the LOI.

## IV.

We next address whether the district court wrongly entered judgment as a matter of law on Youtoo's counterclaims. Youtoo alleged that Al-Saud breached the LOI and his fiduciary duties by failing to manage Youtoo Middle East's operations and fraudulently inducing Youtoo to sign the LOI so Al-Saud could gain control of the joint venture.

The district court rejected the counterclaims on the ground that the testimony of Youtoo's damages expert was too speculative. We review that evidentiary question for abuse of discretion. *GIC Servs., L.L.C. v. Freightplus USA, Inc.*, 866 F.3d 649, 660 (5th Cir. 2017).

The Middle East entity never earned a profit. Parties cannot recover anticipated profits when "there is no evidence from which they may be intelligently estimated." *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994) (quoting *Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1098–99 (Tex. 1938)). Those profits must be ascertainable with a reasonable degree of certainty based on objective facts, figures, or data. *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 170–71 (5th Cir. 2010). That a business is new and unestablished is a consideration in applying the reasonable certainty standard but is not conclusive. *Hiller v. Mfrs. Prod. Research Grp. of N. Am., Inc.*, 59 F.3d 1514, 1518 (5th Cir. 1995); *see also Helena Chem Co. v. Wilkins*, 47 S.W.3d 486, 505 (Tex. 2001) (holding a lack of

profit history does not preclude a business from recovering lost future profits). Yet the "mere hope of success of an untried enterprise, even when that hope is realistic, is not enough for recovery of lost profits." *Texas Instruments*, 877 S.W.2d at 279–80 (mentioning other important factors as well, including the experience of those involved, the nature of the activity, and the relevant market); *see also Burkhart Grob Luft und Raumfahrt GmbH & Co. v. E-Systems, Inc.*, 257 F.3d 461, 467 (5th Cir. 2001) (noting courts have required evidence that a new venture "had a good chance of succeeding" to allow recovery of future profits). The Supreme Court of Texas thus found a lack of reasonable certainty to project damages for a new venture when no working model of the product existed, its viability was in doubt, and the company that was supposed to produce it had never operated at a profit. *Texas Instruments,* 877 S.W.2d at 280.

Many of these problems also characterize Youtoo Middle East. It was a new venture with no history of profitability. The joint venture had few signed agreements with regional broadcasters or governments. Defendants' damages estimates had to rely in large part on *hoped for* partnerships, and speculation about the profits those agreements would generate. The profit calculations defendants would have presented at trial were "projections that were presented to investors," calculations which Texas courts have held insufficient when not supported with more reliable indicators of profitability. *See Hernandez v. Sovereign Cherokee Nation Tejas*, 343 S.W.3d 162, 174 (Tex. App.—Dallas 2011, pet. denied) (finding lost profit projections based on an investor prospectus insufficient to support a damages award). And though members of Youtoo's executive team had extensive experience in media and technology, it was not them but Al-Saud who managed Youtoo Middle East.

The "evidence" of lost profits was speculative. As such the trial court did not abuse its discretion in excluding it and thus dismissing the counterclaims.

No. 17-10622

V.

Lastly, we consider the district court's ruling that Al-Saud was not entitled to attorneys' fees under the Facility Agreement. Unlike the LOI, the Facility Agreement contains an attorneys' fees provision (section 10): "The Borrower must pay the Lender the amount of all costs and expenses (including legal fees) incurred by it in connection with the enforcement of, or the preservation of any rights under, this Agreement." Yet the court rejected Al-Saud's fee request because he did not refer to that provision in the complaint. We review that decision for abuse of discretion. *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 765 (5th Cir. 1996).

The boundary separating sufficient and insufficient pleading of requests for fees is ill-defined. *See, e.g.*, *id.* (holding that merely requesting "costs" is inadequate). A party must at a minimum "put its adversaries on notice that attorneys' fees are at issue." *Id.* Other circuits require specific pleading under Rule 9(g), *id.* at 764 (collecting cases), which "is designed to inform defending parties as to the nature of the damages claimed in order to avoid surprise; and to inform the court of the substance of the complaint," *Great Am. Indem. Co. v. Brown*, 307 F.2d 306, 308 (5th Cir. 1962). In our court, satisfying Rule 9(g) appears to be sufficient but not necessary. *United Industries*, 91 F.3d at 765 (noting "exceptions to this general rule" of specific pleading). And a pleading defect may be cured by amendment or later notice. *See Crosby v. Old Republic Ins. Co.*, 978 F.2d 210, 211 n.1 (5th Cir. 1992) (finding no error when the court considered a claim for attorneys' fees, despite the company's failure to plead special damages, because it advanced that claim during pretrial conferences); 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRAC. & PROC. § 1312 & n.3 (noting that the failure to plead special damages bars recovery *unless* the defect is cured by amendment under Rule 15(b)); *see also Henderson v. Montgomery Cty.*, 1993 WL 560302, at *3–4 (5th Cir. Dec. 30, 1993) (finding

14

the district court abused its discretion in failing to consider Henderson's postcomplaint "memorandum" as a motion to amend and not allowing amendment of his claims); *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972) (reversing the district court because it did not construe an opposition to summary judgment as a motion to amend the pleadings with respect to Sherman's theory of the case).

It is debatable whether the complaint put Youtoo on notice that Al-Saud was seeking fees if he showed a breach of the Facility Agreement. Its "Breach of Contract" section says that as a "result of Defendants' breach of the LOI and *Facility Agreement*, Plaintiff is incurring damages, plus *attorneys' fees*" and "all conditions precedent to Plaintiff's right to recover under the agreement*s* have . . . occurred." (emphases added). But in the "Attorneys' Fees" section, Al-Saud requests fees only under the Texas statute. Asking for fees under the statute without also invoking section 10 of the Facility Agreement could be interpreted as a conscious decision to forego them under the latter. As a result, the complaint is not on its own enough for us to find that the court below abused its discretion.

But that calculus changes when other filings giving notice are considered. Al-Saud's motion for summary judgment asserts that he was entitled to recover fees incurred "pursuant to the parties' contracts and Texas law. *App. 18 (§ 10)*; Tex. Civ. Prac. & Rem. Code. § 38.001." (emphasis added). Moreover, the Joint Pretrial Order says, "Plaintiff is also entitled to recover his reasonable and necessary attorneys' fees . . . for breach of the Facility Agreement."

This subsequent material, particularly when considered in combination with language from the complaint, provides sufficient notice. By ignoring these later filings, and our caselaw indicating that they may cure a fee-related pleading defect, the court below abused its discretion.

No. 17-10622

\* \* \*

The judgment of the district court is AFFIRMED as to Wyatt's liability for breach and attorneys' fees under section 38.001, AFFIRMED as to the dismissal of the defendants' counterclaims, and REVERSED and REMANDED as to the denial of attorneys' fees under the Facility Agreement.