# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 28, 2023

Lyle W. Cayce
Clerk

No. 22-50709

William Wilson,

*Plaintiff—Appellant*,

*versus*

Marshall Shredding, L.L.C.; MedSharps Treatment, L.L.C.,

*Defendants—Appellees*.

───────────────────────────────

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-1470

───────────────────────────────

Before Higginbotham, Southwick, and Willett, *Circuit Judges*.
Per Curiam:[*]

William Wilson appeals the district court's order granting his former employer's motion for summary judgment. The district court concluded Wilson did not take leave in a manner consistent with the requirements of the Emergency Paid Sick Leave Act, which was a temporary federal measure related to the COVID-19 pandemic. He therefore could not establish his

───────────────────

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

*prima facie* case for his claim of retaliation for taking leave. On appeal, Wilson abandons that theory of liability and urges us to reverse because the retaliation was a result of his filing an internal complaint under the Act. No error is shown under the new theory. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

William Wilson was employed by MedSharps Treatment, L.L.C., as a warehouseman from 2017 until he was terminated on August 26, 2020. Med-Sharps is a medical waste processing company. It is a sister company to Marshall Shredding, L.L.C., a paper shredding business. Wilson did not perform any work for Marshall Shredding, but both companies are defendants here.

At the onset of the COVID-19 pandemic in March 2020, MedSharps collected medical waste from hospitals. The nature of the business meant there was no opportunity for Wilson to work remotely. MedSharps took preventative measures for employee safety, such as requiring employees to "take their temperature using a contactless forehead thermometer" upon arrival at work.

On several occasions throughout the spring and summer of 2020, Wilson missed work for COVID-19 testing, either for himself or for his children. In June 2020, Wilson arrived late to work without giving notice to his supervisors. In July 2020, Wilson did not go to work one day and did not give notice to his supervisors. This caused the company to counsel Wilson and warn him that further failures to comply with his obligations could cause his suspension or even termination.

On July 28, 2020, Wilson fell ill and asked his supervisor for permission to leave work to get tested for COVID-19. The supervisor denied his request. Wilson then asked to take off the next day so he could get tested. His supervisor told him to contact Chief Operating Officer David Moad or the Chief Financial Officer Mary Jon Hayne with his request. On July 29,

2020, Wilson was tested but was unable to have his children tested on the same day. He informed the supervisor that he would be taking his children on the following day for testing at their pediatrician's office. He requested time to quarantine.

On July 30, 2020, Wilson's children were tested for COVID-19. Wilson contacted Moad, stating "he needed to take time off from work because he and his child had all of the COVID symptoms, and he was waiting for test results for himself and his children." Wilson stated he told Moad, "I had looked into it and the law required that I be allowed to quarantine regardless of whether I was ultimately positive or negative and that I was entitled to sick pay during quarantine." According to Wilson, Moad disagreed, told him he did not need to quarantine if he was negative, and told him he was not entitled to sick pay beyond what had accrued. That evening, Wilson received an email confirming he was positive for COVID-19.

On August 3rd, Wilson's son also tested positive. Wilson texted Moad regarding his job status. Moad responded by asking Wilson to send him the test results. On August 4th, Wilson exchanged a few messages with Human Resources Manager Dee Valle, who also requested the test results. Wilson sent a screenshot of his test results to Moad and Vale, but it did not include the date of testing, the provider, or any other relevant information except for the positive result. Valle asked for more detailed documentation. Wilson provided this information a week later.

On August 13, 2020, Wilson returned to work and was counseled for his failure to communicate with the company. He was told such failures could result in suspension or termination. On August 21, 2020, the front-desk thermometer went missing. A video revealed that Wilson took the thermometer and never brought it back. Moad, Hayne, and Wilson's direct supervisor agreed Wilson should be terminated based on his taking the

thermometer, which they considered to have created a safety risk for all employees. Wilson denied taking the thermometer, or at least that any taking was intentional.

Five days later, at a meeting with various members of company management, Wilson was told that he was fired. During the meeting, Wilson texted his brother as to where the thermometer was located — behind certain objects on a high shelf in the break room — and asked him to bring it to the meeting room. The brother did so.

Wilson filed suit against MedSharps and Marshall Shredding in December 2020, alleging he had been discharged in retaliation for taking leave he was permitted to take under the provisions of temporary federal enactments passed in response to the COVID-19 pandemic. We will later outline the relevant terms of these enactments.

The district court granted summary judgment in favor of MedSharps because Wilson had failed to present a *prima facie* case of retaliation for his taking protected leave. *Wilson v. Marshall Shredding LLC*, 616 F. Supp. 3d 633, 645 (W.D. Tex. 2022). Wilson, in his brief responding to the summary judgment motion, had also argued he had made an internal complaint regarding the company's alleged failure to comply with the Emergency Paid Sick Leave Act. The district court did not address that argument. Wilson timely appealed.

## DISCUSSION

We start with the federal statutory provisions at the center of this litigation. The Families First Coronavirus Response Act ("FFCRA") was enacted in response to the onset of the COVID-19 pandemic. Pub. L. 116-127, 134 Stat. 178 (2020). The Emergency Paid Sick Leave Act ("EPSLA") is a component of the FFCRA. The FFCRA and EPSLA expired on December 31, 2020. Pub. L. 116-127, § 5109, 134 Stat. 178, 198 (2020).

No. 22-50709

The EPSLA required employers to provide up to 80 hours of paid sick leave for employees who established various grounds for entitlement related to COVID-19. 29 U.S.C. § 2620(a)(1)(B), FFCRA §§ 5102(a)–(b), 5108–09, 5110(2)(B). There is an anti-retaliation provision:

> It shall be unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who—
>> (1) takes leave in accordance with this Act; and
>> (2) has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act (including a proceeding that seeks enforcement of this Act), or has testified or is about to testify in any such proceeding.

Pub. L. 116-127, § 5104, 134 Stat. 178, 196–97 (2020).

The EPSLA exempted "health care providers" from its protection. §§ 5102(a), 5110(4); 29 U.S.C. § 2611(6). Defendants argued that Wilson was a health care provider and therefore not covered by these provisions. The district court assumed, for purposes of its decision, that Wilson was not a health care provider and was entitled to EPSLA protection. *Wilson*, 616 F. Supp. 3d at 641. We need not address the validity of the assumption.

There is little caselaw on the statute. The district court, without any objection on appeal from either party, decided that in evaluating the claim of retaliation, it would employ the burden-shifting analysis used for claims under Title VII. *Id.* at 641. That meant the plaintiff had the burden to produce evidence that at least created a fact issue that the adverse employment action was a result of retaliation for conduct protected under the relevant statute. *Id.* at 642. Defendants would then need to produce evidence of a legitimate, nondiscriminatory reason for their action, and the plaintiff would then need to convince the fact finder that the alleged reason was pretextual and retaliation was the actual cause. *Id.* We accept that approach in our analysis.

No. 22-50709

The district court held that Wilson failed at the first stage of analysis, *i.e.*, in failing to present evidence of his *prima facie* case that his termination was in retaliation for his taking protected leave under these provisions. On appeal, Wilson ignores the district court's holding and urges error only in what the district court failed to address — namely, the alternative argument that Wilson engaged in a protected activity by filing a complaint related to the EPSLA. Thus, the validity of the analysis or holdings in the district court's opinion are not challenged here.

We turn, then, to the question of whether this alternative theory can even be considered on appeal.[1] "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). When considering a motion for summary judgment, the district court "does not err by disregarding a theory of liability asserted in the plaintiff's response that was not pleaded as required by the applicable pleading standard."[2] *Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016). The parties dispute whether enough was alleged in the complaint to support this alternative theory that retaliation occurred because Wilson made an internal complaint about the company's COVID-19 practices.

In his reply brief on appeal, Wilson seeks to identify where in his complaint the necessary claim was made. He refers only to two paragraphs in the

---

[1] The parties dispute whether, due to scant argument on the issue in his opening brief on appeal, Wilson can even argue that his complaint sufficiently presented the issue. We will not enter the debate and simply accept that arguments about the adequacy of the complaint are properly presented on appeal.

[2] "The denial of a motion by the district court, although not formally expressed, may be *implied* by the entry of a final judgment or of an order inconsistent with the granting of the relief sought by the motion." *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994).

facts section of the complaint. One paragraph alleges he was told his employment was not guaranteed if he took time off to be tested or to quarantine. The other paragraph, which is the next one in the complaint, says that Wilson felt sick and got a COVID-19 test. He was told to return to work; he refused because he was awaiting test results. The key sentence in that paragraph, he seems to argue, was this: "Plaintiff requested that he be given the time off to quarantine and that he be paid for his time consistent with federal law."

Wilson's brief on appeal argues that the just-quoted sentence was an "assertion of rights" protected by federal statute. That may be, but he never claims that this assertion of rights is what got him fired. Instead, the complaint states that he "experienced retaliation for *his protected leave*," and "he was discharged from employment because he sought, took, and asked for payment for, *leave* under the FFCRA." (Emphasis added.)

Wilson attempts to overcome the omission by arguing that one statement in the complaint encompasses the "filing a complaint" basis for relief: "Plaintiff avers that he was discharged from employment because of his protected activities under the [EPSLA], the FFCRA, and Section 3611(8) of the CARES Act." That sentence does not overcome the lack of any factual support in the complaint for this basis of relief. He therefore did not adequately plead the cause of action on which he predicates his appellate argument. The district court correctly found that the complaint alleged only a cause of action for retaliatory discharge on the basis of *taking leave* pursuant to EPSLA.

Because Wilson did not adequately plead the "filing a complaint" basis for retaliatory discharge, he could not raise this issue for the first time in his motion in opposition to summary judgment. He also cannot raise it on appeal to this court. The district court's opinion is otherwise unchallenged.

AFFIRMED.