# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 6, 2024

Lyle W. Cayce
Clerk

––––––––––––––

No. 23-50515

––––––––––––––

Rogelio Barron, *Individually and on Behalf of* Anthony Barron, *Deceased*; Maria Barron, *Individually and on Behalf of* Anthony Barron, *Deceased*,

*Plaintiffs—Appellants*,

*versus*

United States of America,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CV-1184

_____

Before Elrod, Ramirez, *Circuit Judges*, and Ashe, *District Judge*.[*]
Jennifer Walker Elrod, *Circuit Judge*:

Plaintiffs-Appellants Rogelio Barron and Maria Barron appeal the district court's grant of the government's motion for summary judgment. Because Appellants' general negligence and premises liability claims are barred under Texas law, we AFFIRM the district court's judgment as to

_____

[*] United States District Judge for the Eastern District of Louisiana, sitting by designation.

those claims.  Because it is unclear whether Appellants can recover under a theory of negligent undertaking as a matter of Texas law, we CERTIFY that question to the Supreme Court of Texas.

I.

This suit arises out of the drowning death of Anthony Barron, a civilian contractor employed on a United States military facility called Camp Bullis, which is located outside of San Antonio, Texas.  About ninety miles of roads run through the Camp, including Wilkerson Road and Camp Bullis Road.  *Barron v. United States*, 31 F.4th 347, 349 (5th Cir. 2022).  Both roads contain low water crossings that are on a flood plain and are equipped with gates that can block the crossings.  As the regulatory framework that governs Camp Bullis recognizes, the Camp, "including its main roads, is susceptible to flash flooding."  Camp Bullis Reg. 350-1, § 12-4(c).  Accordingly, the Camp's regulations include numerous "safety precautions."  One such precaution provides that "[a]ll Range/Control Area/Impact Area gates will either be locked or guarded by the unit using the area."  *Id.* at § 2-3(d); *see also Barron*, 31 F.4th at 350.

Beginning in the early morning in October 2015, Camp Bullis experienced a heavy rainstorm.  Two officers were responsible for inspecting the low water crossings.  *Barron*, 31 F.4th at 349.  The officers began by inspecting the crossing on Camp Bullis Road, which they closed.  *Id.*  The officers had not yet inspected the low water crossing on Wilkerson.  Thus, they did not know that the gate was open. Meanwhile, Anthony Barron drove down Wilkerson Road while on his way to work.  With no gate to keep him out, Barron tried to cross the low water crossing in his vehicle.  The vehicle was swept away, and Barron unfortunately drowned.

## II.

Barron's parents filed a suit against the United States, alleging general negligence, premises liability, and negligent undertaking claims, and seeking to recover under the Federal Tort Claims Act.

At the close of discovery, the United States filed a Motion to Dismiss or, in the alternative, a Moton for Summary Judgment. The district court dismissed all claims on the basis of sovereign immunity, holding that each of the government's alleged failures fell within the discretionary function exception to the FTCA's waiver of sovereign immunity. *Barron*, 31 F.4th at 349. On appeal, Appellants argued that "the decision to close and lock the gate [on Wilkerson Road] did not fall under the discretionary function exception." *Id.* We reversed, finding that Camp Bullis regulation 350-1, § 2-3(d) did not confer discretion, but instead required that the gate be locked at all times unless guarded by a unit using the nearby area. *Barron*, 31 F.4th at 350.

On remand, the parties submitted additional briefing and argument regarding summary judgment as to whether the government was liable for the alleged failure by Camp Bullis personnel to lock or guard the gate. The court granted the government's motion for summary judgment. In doing so, the court held that: (1) Texas law bars Appellants from bringing a general negligence claim in this circumstance; (2) the natural accumulation doctrine precludes Appellants from prevailing on a premises liability claim; (3) Appellants did not adequately plead negligent undertaking; and (4) leave for Appellants to amend their complaint is not warranted because it would be futile given that Appellants could not prevail on a negligent undertaking claim as a matter of law. Appellants filed a timely notice of appeal.

III.

We review a district court's grant of summary judgment *de novo*. *Feist v. La., Dep't of Just., Off. of Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). To affirm the district court's grant of summary judgment, we would need to hold that Appellants' general negligence, premises liability, and negligent undertaking claims all fail. While we agree with the district court's holdings that Appellants' general negligence and premises liability claims fail as a matter of law, we reject that court's holding with respect to Appellants' negligent undertaking claim for two reasons. First, the district court held that Appellants did not adequately plead negligent undertaking. We disagree. Second, whether Appellants can recover under a theory of negligent undertaking is unclear as a matter of Texas law. Accordingly, we certify that question to the Supreme Court of Texas.

A.

Beginning with Appellants' general negligence claim, we affirm the district court's holding that they cannot recover under a theory of general negligence. Under Texas law, "a person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner," but not both. *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). Whether a person injured on another's property has a general negligence claim or a premises liability claim depends on the factual circumstances of the case. *Id.* "When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. When the injury is the result of the property's condition rather than an activity, premises-liability principles apply." *Id.* (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)).

In other words, the general negligence theory of recovery is available when an injury results from "a malfeasance theory based on affirmative,

contemporaneous conduct." *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017) (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010)). To the contrary, premises liability claims are available when the alleged injury concerns "a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Id.* And the law is clear: "Creative pleading does not change the nature of a claim; if a claim is properly determined to be one for premises defect, a plaintiff cannot circumvent the true nature of the claim by pleading it as general negligence." *Id.* at 480 (internal citation, quotations, and alterations omitted).

In this case, Appellants' alleged injury arose from the government's failure to close the gate at the low water crossing on Wilkerson Road or to monitor the crossing at that point. Because "[t]here was no ongoing activity when [plaintiff] was injured," *Keetch*, 845 S.W.2d at 264, Appellants' claim in this case sounds in premises liability and not negligence. Thus, the district court was correct to grant the government's motion for summary judgment on Appellants' general negligence claim.

## B.

Having established that Appellants' claim would properly be characterized as one of premises liability, and not general negligence, we next consider whether Appellants can recover under a premises liability theory. We agree with the district court's holding that they cannot.

To prevail on a premises liability claim under Texas law, a plaintiff must establish:

> (1) that [the defendant] had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm to [the plaintiff]; (3) that [the defendant] did not exercise reasonable care to reduce or to eliminate the risk; and (4) that [the defendant's] failure to use such care proximately caused [the plaintiff's] personal injuries.

*United Scaffolding*, 537 S.W.3d at 471 (internal citation omitted) (alterations in original). Texas courts have consistently held as a matter of law that naturally occurring or accumulating conditions such as rain and mud do not create conditions posing an unreasonable risk of harm. *See, e.g.*, *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 675–76 (Tex. 2004).

Here, it is undisputed that Appellants' claims are grounded in the allegation that heavy rain accumulated at the low water crossing and resulted in Barron's car being swept away by flood waters. *Barron*, 31 F.4th at 349. Thus, the natural accumulation doctrine applies, and Appellants' premises liability claim fails as a matter of law because Appellants cannot establish an unreasonable risk of harm.

## C.

We now turn to Appellants' negligent undertaking claim. As a preliminary matter, we hold that Appellants adequately pleaded a negligent undertaking claim in their Third Amended Complaint. To state a claim for negligent undertaking, a plaintiff must allege that: (1) the defendant undertook to perform services that it knew or should have known were necessary for the protection of others; (2) the defendant failed to exercise reasonable care in performing those services; and (3) the plaintiff either relied upon the defendant's performance or the defendant's performance increased the plaintiff's risk of harm. *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119–20 (Tex. 1976).

Appellees argue, and the district court agreed, that because they "did not expressly allege a claim for negligent undertaking" in their Third Amended Complaint, the claim is not properly before the court. *See Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). We

disagree. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, a party need not include the proper label for a claim in their complaint so long as they plead each element of the claim that they are trying to bring. Indeed, "[a] rose is a rose is a rose," even if you do not call it by that name. Gertrude Stein, *Sacred Emily*, in Geography and Plays 278, 287 (1922). While it is true that Appellants did not "expressly" characterize their claim as one of negligent undertaking in their complaint, Appellants adequately pleaded each element of the claim.

Beginning with the first element of negligent undertaking, Appellants pleaded the following: "Prior to and on October 30, 2015, [the government] had the duty . . . and responsibility to close, block, and otherwise restrict access to low water crossings." Appellants further alleged that after inspecting the gate at the low water crossing on Camp Bullis Road, the government "next inspected low water crossings upstream from the Camp Bullis Low Water Crossing" because the water crossing that is the subject of this suit was a lower priority, given that it was "required to be blocked, closed, and otherwise restricted by the aforementioned closed and locked gate." In addition, they pleaded that the gate was wrongfully unlocked prior to the events that led to Barron's death, that unlocking the gate without inspecting it was "an affirmative act of negligence," and that it "created an unreasonably dangerous condition." Thus, while the Third Amended Complaint does not directly state that the government "undertook to perform services that it knew or should have known were necessary for the protection of others," *Colonial Sav. Ass'n*, 544 S.W.2d at 120, Appellants'

statements were sufficient to adequately plead the first element of negligent undertaking.[1]

Turning to the second element of negligent undertaking, we hold that Appellants adequately pleaded that the defendant failed to exercise reasonable care in "opening and unlocking the gate . . . and thereby creating a dangerous condition" and also in "failing to inspect the Subject Low Water Crossing prior to Anthony Barron's approach." Finally, Appellants adequately pleaded that they relied upon the government's performance of its duty when they alleged that "Barron reasonably believed the Subject Low Water Crossing was safe and/or suitable to be crossed for civilian workers like him, because it was unlocked . . . ."

Indeed, even though Appellants' pleadings may not be the most clearly organized, Appellants' reliance on a negligent undertaking theory does not constitute the sort of "surprise switcheroo that our precedents forbid," and that the district court's reasoning suggests took place here. *Jackson v. Gautreaux*, 3 F.4th 182, 189 (5th Cir. 2021) (holding that plaintiffs' claim that a sheriff "failed to adequately train his officers to deal with mentally unstable individuals" was not properly before the court where the complaint alleged the sheriff "failed to adequately train his officers to avoid excessive force"). Federal pleading standards do not demand "any magic

---

[1] The dissenting opinion states that although the complaint includes "allegations that the duty to keep the gate locked was unreasonably disregarded . . . that was not the duty that the United States arguably undertook to protect third parties like [Barron]." *Post*, at 20–21. We disagree. As we have held in a prior appeal concerning this event, Camp Bullis regulation 350-1, § 2-3(d) constitutes a non-discretionary undertaking by the United States to ensure that "[a]ll Range/Control Area/Impact Area gates will either be locked or guarded by the unit using the area." *Barron*, 31 F.4th at 350 (alteration in original) (quotations omitted). And Appellants adequately pleaded that in failing to lock or guard the gate in question, the United States "created an unreasonably dangerous condition" to Barron.

words," but instead only require plaintiffs to give fair notice of all claims brought against the defendant. *Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748, 756 (5th Cir. 2021) ("[P]leading standards don't demand such precision in terminology or any magic words.").

## D.

Having established that Appellants' negligent undertaking claim was adequately alleged in their Third Amended Complaint, we now turn to whether Appellants can recover under a theory of negligent undertaking as a matter of law. Because that question appears to be an open question of some importance to Texas law, for which we are unable to make a reliable *Erie* guess, we certify it to the Supreme Court of Texas.

As explained in sections III(A) and III(B) of this opinion, Texas law clearly limits injured persons to bringing either a general negligence claim or a premises liability claim. *Occidental Chem. Corp.*, 478 S.W.3d at 644.[2] However, the Supreme Court of Texas has not directly spoken on whether a theory of negligent undertaking can serve as an alternate theory of recovery when the natural accumulation doctrine bars premises liability.

Nevertheless, in its briefing, the government argues that Texas law also extends the prohibition on recovery under alternative theories of liability to negligent undertaking claims. In other words, just as a general negligence claim cannot serve as an alternative theory for liability when a premises liability claim is available, the government argues that negligent undertaking

---

[2] The Supreme Court of Texas has primarily addressed the issue of alternative theories of liability in slip-and-fall cases, making clear that plaintiffs in such cases can only pursue a claim under a general negligence or negligent activity theory when their injuries are caused by the landowner engaging in a *contemporaneous* negligent activity. *See Keetch*, 845 S.W.2d at 264; *see also Alexander v. Wal-Mart, Inc.*, No. SA-19-CV-0721-OLG, 2021 WL 1226565, at *4 (W.D. Tex. Mar. 31, 2021).

claims are inherently inconsistent with premises liability claims. Specifically, the government asserts that a negligent undertaking claim would be improper in this circumstance because negligent undertaking claims are only appropriate when there is no underlying duty of care. *See In re First Rsrv. Mgmt., LP*, 671 S.W.3d 653, 660 (Tex. 2023) (holding that the imposition of a duty where one otherwise would not exist is a prerequisite to negligent undertaking liability). And here, the government alleges that it owed Barron the duty of care that it owes any invitee on its property.

To the contrary, Appellants argue—and the district court agreed—that Texas law does not bar a negligent undertaking theory as an alternative theory for liability when recovery on a claim for premises liability is unavailable. *See Wilson v. Tex. Parks & Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex. 1999) ("[T]o prevail on a premises liability claim a plaintiff must prove that the defendant possessed . . . the premises where injury occurred. But a party who does not own, occupy, or control a premises may nevertheless owe a duty of care if it undertakes to make the premises safe for others."). Accordingly, Appellants argue that a negligent undertaking theory is available where a landowner has no duty to an invitee regarding a natural condition of the land because of the natural accumulation doctrine.

While the Supreme Court of Texas has never said that negligent undertaking is a suitable alternative remedy when a landowner has taken affirmative acts related to natural conditions of his land, that Court has suggested in dicta that it is possible in some circumstances. *City of Waco v. Kirwan*, 298 S.W.3d 618, 627 (Tex. 2009) ("[I]t is possible a duty may be imposed on a landowner who has undertaken affirmative acts related to natural conditions."); *see also Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 54 (Tex. 1997) ("One who agrees to make safe a known dangerous condition of real property owes a duty of due care."). The Houston Court of Appeals for the First District has similarly recognized that liability can attach when a

No. 23-50515

defendant agrees to keep a plaintiff's property protected from floods. *Tex. Woman's Univ. v. The Methodist Hosp.*, 221 S.W.3d 267, 284–85 (Tex. App.—Houston [1st District] 2006).

As required by our precedent, we consider three factors when deciding whether to certify this question to the Supreme Court of Texas:

> (1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.

*Silguero v. CSL Plasma, Inc.*, 907 F.3d 323, 332 (5th Cir. 2018) (quoting *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 522 (5th Cir. 2015)). All three factors favor certification here. First, as articulated above, the Supreme Court of Texas has not directly weighed in on whether a negligent undertaking theory of recovery is available to a plaintiff whose premises liability claim is barred by the natural accumulation doctrine. Thus, the first factor favors certification. Comity interests also favor certification. Whether future plaintiffs who are barred from pursuing a premises liability claim because of the doctrine of natural accumulation may pursue recovery under a negligent undertaking theory in federal court depends on the answer to this question. And finally, we are unaware of any practical limitations to certification.

## V.

We AFFIRM the district court's decision to grant the government's motion for summary judgment on Appellants' general negligence and premises liability claims.

No. 23-50515

Regarding Appellants' negligent undertaking claim, we certify the following question of state law to the Supreme Court of Texas:

> Can a landowner's affirmative act create a duty to protect an invitee from dangers caused by naturally occurring conditions under a theory of negligent undertaking where the natural accumulation doctrine bars recovery under a theory of premises liability?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the question certified. We retain this appeal pending the Court's response.

QUESTION CERTIFIED.

No. 23-50515

Irma Carrillo Ramirez, *Circuit Judge*, concurring in part and dissenting in part:

Because Appellants have not asserted or pleaded a claim for negligent undertaking, I respectfully dissent from certification. I concur in the holding affirming the dismissal of Appellants' general negligence and premises liability claims.

## I

Also relevant to the facts surrounding Anthony Barron's tragic death are the duties and obligations of the United States to restrict access to the roads on Camp Bullis. Wilkerson Road and Camp Bullis Road are two north-south roadways running through Camp Bullis. Camp Bullis Road is most commonly used to travel around the base. Wilkerson Road, on the other hand, is generally blocked by a "locked and closed gate leading to the road[.]" According to applicable regulations, this gate "will either be locked or guarded by the unit using the area[,]" such that civilians generally cannot access the road. *See* Camp Bullis Reg. 350-1, § 2-3(d); *see also Barron v. United States*, 31 F.4th 347, 349 (5th Cir. 2022).

Both roads have low water crossings that can become too dangerous to navigate when flooding occurs. The low water crossings are inspected by security personnel, who decide whether the crossings should be closed due to flooding. On the day of Anthony's death, personnel determined that the low water crossing on Camp Bullis Road should be blocked off. Because access to Wilkerson Road was supposed to be restricted, security personnel made the decision to check other low water crossings before checking the one on Wilkerson Road. Unbeknownst to them, however, the gate blocking Wilkerson Road had been left open.

Typically, Anthony would drive to work using Camp Bullis Road, the main thoroughfare through Camp Bullis. On the day of his death, the barrier

blocking the low water crossing on Camp Bullis Road had been closed. Anthony proceeded to Wilkerson Road, and because the gate was unlocked, he was able to access the road. He attempted to cross the low water crossing, and his car was swept away.

Appellants amended their claims under the FTCA three times. Their third amended complaint—the live pleading—expressly asserted claims for "general negligence" and "premises liability"; it did not expressly assert a claim for negligent undertaking. As they concede, no negligent undertaking claim was expressly asserted in any of their prior complaints. After the United States moved to dismiss or, in the alternative, for summary judgment, the district court dismissed all claims based on sovereign immunity, concluding that all conduct that Appellants complained of fell within the discretionary function exception to the FTCA's general waiver of sovereign immunity. Appellants appealed, arguing only that "the decision to close and lock the gate [on Wilkerson Road] did not fall under the discretionary function exception." *Barron*, 31 F.4th at 349. This court reversed. *Id.* at 350.

On remand, the United States renewed its motion for summary judgment on the merits of Appellants' general negligence and premises liability claims. In their response to that motion, Appellants for the first time expressly asserted a negligent undertaking claim. At oral argument on the motion, Appellants agreed with the district court that the only remaining issue was whether "the gate that would have blocked access to Wilkerson Road should have been closed." They maintained that this question implicitly incorporated their negligent undertaking claim, which they argued had been adequately pleaded in their third amended complaint.

The district court granted the United States's motion for summary judgment as to Appellants' negligence and premises liability claims. It noted that the two claims were mutually exclusive and concluded, based on Texas

caselaw, that "[Appellants'] claim in this case sounds in premises liability rather than negligence." Because that claim was precluded by the natural accumulation doctrine—which "bars premises liability claims caused by naturally occurring conditions"—the district court dismissed it. And because the natural accumulation doctrine "negated the Government's duty to use reasonable care to eliminate the risk" posed by flooding, Appellants were not precluded from asserting a negligent undertaking claim.

The district court found, however, that Appellants had not asserted their negligent undertaking claim until they responded to the Government's summary judgment motion. It considered whether Appellants should be granted leave to amend their complaint. Ultimately, it concluded that any amendment would be futile because Appellants could not "provide evidence of either the duty that the Government assumed or the proper standard of care" applicable to their negligent undertaking claim. It dismissed the complaint in full. Appellants filed this appeal.

## II

As a preliminary matter, the United States argues that because Appellants did not adequately brief their argument that the district court erred in concluding that they first raised their negligent undertaking claim in their summary judgment response, they have forfeited that argument.

"A party forfeits an argument . . . by failing to adequately brief the argument on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021); *see also Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) (collecting cases); Fed. R. App. P. 28(a)(8)(A) (requiring appellant's brief to include "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies").

Here, Appellants' brief did not address the district court's procedural conclusion that they had failed to assert a negligent undertaking claim in their third amended complaint. Their only reference is a footnote conceding that they did not expressly refer to a negligent undertaking claim in their complaint. That footnote does not set out the applicable standard of review, point to any specific error committed by the district court, or advance any argument regarding the district court's conclusion that the factual allegations contained in the complaint were deficient. This constitutes forfeiture of Appellants' argument that the district court should have reached the merits of their negligent undertaking claim, and this is sufficient to affirm the district court's judgment dismissing the case in full.

## III

"We review a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014).

"[B]efore summary judgment is proper," however, "it first must be determined precisely what causes of action have been asserted and what issues are thus raised either by the complaint or by any defenses[.]" *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. Unit A July 1981). "It is well settled in our circuit that '[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.'" *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) (alteration in original) (quoting *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)). Accordingly, "a district court does not err by disregarding a theory of liability asserted in the plaintiff's response that was not pleaded as required by the applicable pleading standard." *Fulford v. Lowe's Home Ctrs., LLC*, 811 F. App'x 240, 243 (5th Cir. 2020) (per curiam) (quoting *Hoffman v. L&M Arts*, 838 F.3d 568, 576 (5th Cir. 2016)). "We've

repeatedly emphasized this rule" because it avoids any "surprise switcheroo" by plaintiffs. *Jackson*, 3 F.4th at 188–89 (collecting cases).

Here, the district court did not err by concluding that Appellants' negligent undertaking claim was not asserted in their third amended complaint for three reasons: (1) Appellants did not expressly assert the claim; (2) their complaint did not explain why the negligent undertaking doctrine should be extended in a context not yet recognized by state courts; and (3) they did not plead all elements of a negligent undertaking claim.

## A

In the third amended complaint, Appellants specifically asserted a claim of general negligence and, "in the alternative, and out of an abundance of caution," a premises liability theory of recovery. Appellants did not expressly assert a negligent undertaking claim, however. Because Appellants expressly advanced a premises liability theory as an alternative to their general negligence claim, the absence of an express reference to their negligent undertaking claim shows that Appellants did not assert a negligent undertaking claim.

## B

Appellants' third amended complaint also did not demonstrate why the doctrine of negligent undertaking should apply in this case. All parties apparently agree that Appellants' negligent undertaking theory is novel as applied to these facts. Yet the third amended complaint is devoid of any argument or authority supporting Appellants' contention that the doctrine should be extended to cases like this one.

Where a plaintiff asserts a previously unrecognized theory of recovery, neglecting to present any argument in support of recognizing it for the first time is a failure to adequately plead it. *See, e.g.*, *7547 Corp. v. Parker*

No. 23-50515

*& Parsley Dev. Partners, L.P.*, 38 F.3d 211, 218 (5th Cir. 1994) (affirming dismissal of plaintiffs' claim because they "cannot cite to any authority to support [their] novel theory"); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 24 (1987) (Marshall, J., concurring) (rejecting plaintiff's subject-matter jurisdiction argument in part because plaintiff "offered no authority in support of its novel proposition"). Rule 8's requirement that a plaintiff set out his claim for relief in "a short and plain statement of the claim showing that the pleader is entitled to relief" cannot be satisfied where, as here, the plaintiff has neglected to aver that a specific theory of recovery applies to the facts of his case. Fed. R. Civ. P. 8(a)(2).

Appellants' complaint did not allege their novel negligent undertaking theory adequately enough to apprise the United States—and the district court—that Appellants intended to bring that claim.

## C

Finally, Appellants' third amended complaint failed to state a claim for negligent undertaking because it did not plead all the elements of the claim.

Although "a party need not include the proper label for a claim in their complaint so long as they plead each element of the claim that they are trying to bring," Op. at 7, the controlling question is what claims the plaintiff—as the master of his complaint, *see e.g.*, *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008)—has actually pleaded.[1]

---

[1] And, unlike in cases involving *pro se* litigants, courts are not compelled to liberally construe the pleadings of parties represented by counsel. *See, e.g.*, *Woodfox v. Cain*, 609 F.3d 774, 792 (5th Cir. 2010) ("Although we liberally construe pro se pleadings, we do not afford such latitude to pleadings prepared by counsel.").

No. 23-50515

As noted above, although "Texas law generally imposes no duty to take action to prevent harm to others[,]" Texas has "recognized that a duty to use reasonable care may arise when a person undertakes to provide services to another, either gratuitously or for compensation." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837–38 (Tex. 2000). The elements of a negligent undertaking claim are:

> (1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to exercise reasonable care in performing those services; and either (a) the plaintiff relied upon the defendant's performance, or (b) the defendant's performance increased the plaintiff's risk of harm.

*Nall v. Plunkett*, 404 S.W.3d 552, 555–56 (Tex. 2013) (first citing *id.* at 338–39; and then citing RESTATEMENT (SECOND) OF TORTS § 324A).

"[T]he existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). In the context of a negligent undertaking claim, the first element—that the defendant "undertook to perform services that it knew or should have known were necessary for the plaintiff's protection"—refers to the applicable duty of care.

Appellants contend that a negligent undertaking claim was "[a]t the center" of their complaint because they alleged "that the failure to lock the gate was tantamount to the negligent performance of duties set out in a mandatory regulation, which can serve as a basis of an undertaking claim." As the district court recognized,[2] however, Appellants did not "provide

---

[2] The district court acknowledged Appellants' failure to plead a relevant duty as part of its analysis of whether Appellants should be granted leave to amend their complaint

19

evidence of either the duty that the [United States] assumed or the proper standard of care." In other words, Appellants failed to adequately plead the duty element of their negligent undertaking cause of action.

As evidence that the United States undertook a duty to perform services necessary to protect Anthony, Appellants rely on the regulation mandating that the gate restricting access to Wilkerson Road be locked or guarded at all times. But this regulation says nothing of the United States's undertaking to protect third parties from flooding. It does not suggest that the United States undertook to safeguard third parties from severe weather, or what it is obligated to do in order to discharge such an undertaking. As the district court noted, "the gate-locking requirement may have been implemented for any number of reasons aside from flood protection—e.g., preventing members of the public from entering Camp Bullis and injuring themselves, stealing or destroying Government property, or assaulting base personnel."

Further, the complaint reflects a mismatch between the alleged duty and the alleged breach of that duty: to the extent it contains any allegations that Camp Bullis personnel undertook to perform a service necessary for Anthony's safety, that service was to inspect and assess the navigability of the low water crossings. But the complaint contains no allegations that this particular duty was performed negligently because security reasonably presumed that Wilkerson Road was inaccessible and therefore prioritized other low water crossings. The complaint does include allegations that the duty to keep the gate locked was unreasonably disregarded, but that was not the relevant duty that the United States arguably undertook to protect third

---

to assert a claim for negligent undertaking. It concluded that amendment would be futile and therefore leave was not warranted.

parties like Anthony. In other words, that the United States has undertaken a duty to lock or guard a gate does not mean that it has undertaken that duty because it knows it is necessary to protect third parties.

Appellants' third amended complaint failed to identify a relevant duty undertaken by the United States and therefore failed to adequately plead every element of a cause of action for negligent undertaking.

\*     \*     \*

Appellants did not adequately assert or plead their negligent undertaking claim in any of their four complaints and instead waited to do so until they responded to the United States's motion for summary judgment. That is procedurally improper, so there is no determinative question of state law to be answered by the Supreme Court of Texas.[3] Accordingly, I dissent from certification and would affirm the district court's judgment in full.

---

[3] Certification is appropriate only when it is necessary to answer "determinative questions of Texas law having no controlling Supreme Court precedent." Tex. R. App. P. 58.1. But the question that the majority certifies to the Supreme Court of Texas is not determinative in this case because Appellants failed to plead a negligent undertaking claim at all.